proof.  Must he put the defendant upon trial, impanel a jury, open his case, and then declare that he is without the least proof to sustain the charge, and leave the court to direct an acquittal?  The legislature cannot have meant to require such a foolish thing.  This is, of course, an extreme case; but it furnishes an illustration by which the intent of the legislature, as affecting section 671, may well be tested.  This section (671), and the duties and penalties imposed by sections 37 and 38 of the liquor tax law, are in harmony, rather than in conflict.  Thus considered, the requirement of section 37 is the performance by the district attorney of the duty of prosecution whenever there is fair reason to believe, from the evidence at command, or which by diligence may be obtained, that a conviction can be, or, if properly weighed, ought to be, had; and the penalty imposed by section 38 is for a willful or corrupt disregard of this duty, or, at most, a careless neglect to perform it.  But where a diligent and honest investigation discloses an utter want of necessary proof, or if for any other reason, in the intelligent and honest discharge of his duty, the district attorney becomes satisfied that a conviction cannot be had, he may avail himself of the provisions of section 671, and recommend a dismissal, without thereby exposing himself to any penalty whatever.  It would, indeed, be monstrous to say that a district attorney will make himself liable to a fine and removal from office for suggesting to the court a state of facts, and recommending a dismissal of an indictment thereon, in a case where the court might, and indeed ought, "in furtherance of justice," to direct a dismissal, of its own motion, upon deriving the same information from any other source.

Ordered accordingly.

---

REILLY v. TROY CITY RY. CO.

(Supreme Court, Appellate Division, Third Department.  July 6, 1898.)

STREET RAILROADS—COLLISIONS WITH TEAMS—NEGLIGENCE.

> Plaintiff was crossing a bridge in a wagon, when defendant's car came up from the rear, and, in attempting to pass, struck the wagon.  By keeping as far away as possible from the track, the distance between the car and the wagon was $11\frac{1}{5}$ inches.  The evidence tended to show that in crossing the bridge travelers endeavored to avoid passing cars.  Defendant instructed employés to wait if they saw a team coming in the opposite direction, but gave no instruction as to passing teams.  The car driver saw the wagon on the bridge in front of him.  *Held*, that the question of defendant's negligence was for the jury.

Appeal from trial term, Albany county.

Action by Mary Reilly against the Troy City Railway Company.  From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals.  Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

J. F. Crawford (E. Countryman, of counsel), for appellant.
Thomas S. Fagan, for respondent.

MERWIN, J.  On the 28th July, 1894, the defendant was engaged in operating electric motor cars over its street railway extending

from the city of Cohoes to Lansingburgh and Troy. Its track extended through Cohoes in an easterly and westerly direction over and along Ontario street, passing over the bridge on that street spanning the south branch of Mohawk river. The plaintiff lived at Cohoes, and on the day named attended a picnic at Lansingburgh. Upon her return home in the evening, she, with a number of other young people, took passage in an ordinary express wagon. As this was crossing the bridge, a car of defendant came up behind it, and attempted to pass by. In doing so, the running board on the southerly side of the car collided with the hub of the northerly hind wheel of the wagon, the wagon was suddenly pushed forward about three feet, and the plaintiff was thrown out. The plaintiff claims that the collision and the consequent injury to her were occasioned by the negligence of the defendant. Hence this action.

The bridge was an iron lattice bridge about 300 feet long, and not covered. Upon each side there was a footway for passengers and between these footways was the roadway for cars and teams, a girder truss being upon each side of the roadway. The entire width of this roadway was $16^5/_{100}$ feet. The car track was upon the northerly side, and the passageway for teams in use at that time was limited to the space lying between the south side of the railway and the south line of the roadway. This distance, according to the measurement on the part of the plaintiff, was 8 feet and $1^1/_5$ inches. The running board of the car projected southerly beyond the rail $16\frac{1}{2}$ inches. The width of the wagon from hub to hub, outside to outside, was 5 feet 7 inches. On the roadway, close to the framework on the southerly side, there was a guard rail 4 inches high and 6 inches wide. If the rims of the south wheels of the wagon were in contact with this guard rail, there would then be a space of $11^1/_5$ inches between the northerly hub of the wagon and the southerly edge of the running board of the car. The accident occurred about 8 o'clock in the evening, and it was not quite dark. There were 12 or more people upon the wagon, it was about half way across the bridge, and the horse was going upon a slow trot. There were no passengers in the car. Its weight was two or three tons.

The court, in its main charge to the jury, left it to the jury as a question of fact for them to say whether or not it was in itself a negligent act on the part of defendant's employés to attempt to pass the wagon, considering the narrowness of the bridge. At the close of the charge the following occurred between the court and counsel:

"Defendant's counsel asked the court to charge that, if the car could have safely passed had the horse and wagon continued on the same course they were proceeding, then it was not negligence for the car to be propelled at a reasonable speed as it approached the wagon. The Court: Yes, I so charge. (Plaintiff excepts.) (2) Nor was it negligence, under those circumstances, to attempt to pass the wagon. The Court: Yes, I charge that. (Plaintiff excepts.)"

This limited the jury, in their consideration of the question of whether the defendant was negligent in attempting to pass, to the

consideration simply of the circumstance as to whether the car could have safely passed had the horse and wagon continued on the same course they were proceeding, no matter how little the margin in fact was between the car and the wagon, or how great the risk might be of the horse swerving or lurching—as the evidence on the part of the defendant showed it did—towards the track. This allowed the jury to think that the defendant had a right to assume that the horse would not, by the noise of the car approaching, or the ringing of the gong, customary on such occasions, be startled or frightened in a way to swerve the wagon towards the track. The margin, at the most, was extremely small, in view of the possible results of collision. The court, we think, erred in charging as matter of law that it was not negligent, under the circumstances stated in the requests, to attempt to pass the wagon. It was for the jury to say, under all the circumstances of the case, whether the attempt in itself was negligent. There was evidence tending to show that travelers, in passing along that bridge, endeavored to avoid passing cars on the bridge, whether going in same or opposite direction. The defendant instructed its employés to wait as they approached the bridge, if they saw a team coming in the opposite direction. No instructions seem to have been given as to passing teams going in same direction. The motorman saw the wagon with its heavy load before it entered upon the bridge, it passed the car while the latter was standing still, a short distance from the bridge. The apparent risks were such that it should not be said as matter of law that the defendant was not negligent in incurring them.

It is urged that the error, if any, in charging the requests, was cured by the broader language in the main charge, and by what subsequently occurred. We think not. The error was a material one, and is a sufficient ground for reversal.

The appellant claims that the court also erred in submitting to the jury the question of contributory negligence. We do not perceive any error in that regard.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

