64 N.J. 231 (1974)
315 A.2d 1
IN THE MATTER OF STATE OF NEW JERSEY, RESPONDENT, AND PROFESSIONAL ASSOCIATION OF NEW JERSEY DEPARTMENT OF EDUCATION, PETITIONER-APPELLANT STATE OF NEW JERSEY, RESPONDENT, AND NEW JERSEY INSTITUTIONS AND AGENCIES EDUCATION ASSOCIATION, PETITIONER-APPELLANT.
STATE OF NEW JERSEY, APPELLANT, AND THE NEW JERSEY STATE NURSES' ASSOCIATION AND THE JERSEY NURSES' ECONOMIC SECURITY ORGANIZATION, PETITIONERS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued November 7, 1973.
Decided February 5, 1974.
*235 Mr. Edward F. Ryan, Special Counsel to the Governor's Employee Relations Policy Council, argued the cause for State of New Jersey in both cases (Mr. James J. Crowley, Jr., on the brief).
Mr. William S. Greenberg argued the cause for petitioners-appellants Professional Association of New Jersey Department of Education and New Jersey Institutions and Agencies Education Association (Messrs. Sterns and Greenberg, attorneys; Mr. Michael J. Herbert, on the brief).
Mr. Ronald H. De Maria argued the cause for petitioners-respondents The New Jersey State Nurses' Association and The New Jersey Nurses' Economic Security Organization (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. David A. Wallace (of the New York Bar, admitted pro hac vice) argued the cause for Public Employment Relations Commission (Mr. John F. Lanson, of counsel; Mr. Maurice J. Nelligan, Jr., on the brief).
The opinion of the Court was delivered by CONFORD, P.J.A.D., Temporarily Assigned.
We have here for consideration an issue of far reaching importance in the construction and application of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., *236 as amended by L. 1968, c. 303, in particular relation to determination of public employee negotiating units.
The Public Employment Relations Commission ("PERC"), contrary to separate recommendations of hearing officers in the respective cases, denied unit representational status to statewide organizations of registered nurses, in one case, and to an organization of professional educational employees in the Departments of Education and of Institutions and Agencies, in the other. The decision in the nurses' case was reversed by the Appellate Division on appeal in a short, unreported per curiam opinion, substantially for the reasons set forth in the report of the hearing officer in that case. We granted certification. 63 N.J. 557 (1973).
We also, on our own motion, certified the PERC determination in the educators' case while that was pending on appeal in the Appellate Division, 63 N.J. 562 (1973), and consolidated it for hearing with the appeal in the nurses' case.
This litigation began with the filing by the New Jersey State Nurses' Association (NJSNA) in 1969 of a petition with PERC under the 1968 act for representation of all registered nurses employed by the State Department of Institutions and Agencies. Because of objections by the State based upon the supervisory nature of some of the positions involved, the case was ultimately submitted on amended petitions by Jersey Nurses' Economic Security Organization (JNESO), an affiliate of NJSNA, and by NJSNA itself, for representation, respectively, of all non-supervisory registered nurses employed by the State and all supervisory registered nurses so employed.
At the hearing before a hearing officer the State, acting through the Governor's Employee Relations Office on behalf of the Governor's Employee Relations Policy Council (see Executive Orders 3 and 4, L. 1970, pp. 1230-1234), opposed the petitions on the ground that the best interests of the State and its employees, within the guidelines of the statute, would be served by a representational unit comprising substantially *237 all professional employees of the State (excluding college faculties) rather than by the many separate units which would presumably ensue from the acceptance of units based solely on distinct professional identity, as in the case of registered nurses. The nurses, on the other hand, stressed their strong "community of interest" in their profession, pointed to the success they had had in previous negotiations with the State, and indicated possible areas of conflict of interest if they should be grouped with professionals generally, e.g., doctors.
The hearing officer found that the two nurses' units petitioned for would involve about 800 persons sharing about 30 job (civil service) titles; that the professional negotiating unit proposed by the State would (of the over 40,000 state employees) comprise some 6,300 persons in a range of about 550 job titles. He referred to the statutory direction that "[t]he negotiating unit shall be defined with due regard for the community of interest among the employees concerned * * *", N.J.S.A. 34:13A-5.3. He found the community of interest factor satisfied by a unit confined to registered nurses in view of "the historical recognition of nursing as a separate and distinct academic discipline, its acceptance as a recognized profession and its maintenance of organizations" such as the petitioner NJSNA, "concerned with internal self-discipline, training and the maintenance of standards and ethics on both a national and statewide basis". He also referred to the licensing requirements of New Jersey law applicable to registered nurses.
The hearing officer felt that the stated factors were sufficient to establish the petitioning units as "appropriate" under the act. He pointed further to the relatively large proportion of the total 6,300 professionals comprised by the nurses and to the history of prior negotiations of the organization with state representatives.
The educators' case began with the filing in June 1970 by the Professional Association of the New Jersey Department of Education of a petition with PERC requesting certification *238 as the negotiating representative for the professional non-supervisory educational employees in the Department of Education and the Katzenbach School for the Deaf. In October 1970 the New Jersey Institutions and Agencies Education Association similarly petitioned to represent professional, non-supervisory educational employees of the Department of Institutions and Agencies. After the commencement of hearings before a hearing officer (not the one who heard the nurses' case) these petitions were joined to indicate a single petitioner requesting representation of all the personnel covered by both petitions. It was also informally indicated that the petitioner would expand its representation to the professional educational employees in the Department of Higher Education, and to miscellaneous others, so as to achieve statewide coverage of the category. Some of the employees in the proposed unit are teachers but most perform administrative work in overseeing the general public educational system. The total would approximate 1,200 persons.
During the hearings the State took basically the same position in objection to this unit as it had in the nurses' case. The preferable unit was argued to be one of all state-employed professionals, the requisite "community of interest" being reflected by their common status as professionals and the standards, attainments and status inherent therein as such. Stress was laid on the fact that "professionals" are expressly mentioned in the statute, with the implication that this is a permissible unit category. N.J.S.A. 34:13A-6(d). Moreover, the requirements in the Civil Service laws and rules for uniformity in schedules of compensation and regulations as to working conditions were argued to narrow the potential range of negotiability as to working conditions relative to professional employees and therefore to militate in favor of broadly inclusive rather than limited units of representation. The structure of the state government and its bargaining position were contended also to constitute relevant factors.
*239 The hearing officer found that the requested unit was appropriate and should be recommended. He pointed to the community of interest indicated by the fact that all members of the unit were working in the field of education and that almost all were certified to teach. Both departmental groups, moreover, were affiliated with the New Jersey Education Association, a long recognized representative of school teachers. The unit envisaged was regarded as "a logical functional group of such employees", having no conflicts of interest. The hearer thought some six or eight such groups could be constituted out of all the professional employees of the State. The sooner certifications were granted to some groups of professional employees the sooner, it was thought, negotiations on behalf of all such groups could begin, as contemplated by the Legislature. The hearer did not regard a unit of all 6,300 professional employees as an appropriate unit because the diversity of functions and occupations involved would preclude effective and meaningful representation.
After receiving briefs and argument PERC disposed of both sets of applications in one decision. P.E.R.C. No. 68 (May 23, 1972). In dismissing the petitions in both cases the Commission said it was relying on the policy of the statute and the community of interest of the concerned employees. The Commission first reviewed its previous decision in Neuropsychiatric Institute, P.E.R.C. No. 50, that the scope of units of state employees must be statewide, regarding that ruling as a foundation for its decision in the present cases. It said, in reference thereto:
* * * Expressed and implied in that conclusion was an assessment that the strength and significance of the factors cited  in brief, a high degree of centralization of authority in the top echelon of State government and a general uniformity of major terms and conditions of employment for State employees  required a finding that the first distinctive level of common interest among employees extended state-wide and that this was the minimum level for meaningful negotiation of terms and conditions of employment. The commission recognized but refused to give controlling weight to the *240 variety of lesser but more particularized points of common employee interest known to exist in a specific institution or department. Admittedly, a reasonably persuasive case was made for establishing units at the institution or department level by highlighting local differences in conditions and duties, but on balance the factors demonstrating a broader community of interest were considered more compelling. * * *.
P.E.R.C. No. 68, at 7-8.
The Commission then pointed out that it had found in P.E.R.C. No. 50 that it was appropriate to fashion a unit, statewide in scope, "to encompass all employees sharing a broad occupational objective or description". P.E.R.C. No. 68, at 8. The mutuality of employee interest lay in the nature of the service provided. That proceeding resulted in the establishment of three units of nonprofessional, nonsupervisory employees, viz: Health, Care and Rehabilitation Services; Operations, Maintenance and Services; and Craft Employees.[1]
The units here sought, said PERC, conform solely to individual professions. Acceptance of them would require the Commission to recognize the attributes of a particular profession as controlling. The Commission viewed the concept of community of interest more broadly, as containing a number of variable factors, the weight of which in any given case would depend on the facts in the case and "deciding what will best serve the statutory policy"  one of promoting permanent employer-employee peace and the general welfare of the State. While the registered nurses, for example, do "share an identity" by virtue of their common background, licensure and professional goals, these characteristics "do not necessarily create an exclusive community of interest". The statute even permits professionals to be unitized with nonprofessionals if the professionals vote therefor. A fortiori the *241 lines between professions are not necessarily natural barriers. The gravamen of the decision was as follows:
* * * Given the policy considerations of this statute, the Commission believes that the characteristics of a particular profession should not be the determinant in establishing units for negotiations. If community of interest is equated with and limited to such characteristics, the stability and harmony which this Act was designed to promote are in jeopardy. Potentially, every recognized professional group would be segregated, presenting the Employer with multiplicity of units and the likelihood of attendant problems of competing demands, whipsawing, and continuous negotiations which, disregarding the Employer's inconvenience, are not judged to be in the public interest. Fragmentation to that degree cannot be justified on the ground that individual professional interests are so unique that they cannot be adequately represented in concert with others, especially in the absence of a determination that matters of a professional concern are in every instance negotiable as terms and conditions of employment. At this point in the statute's development the Commission is inclined to believe that the purposes of the Act will be better served if, when dealing with professional employees, the individual distinctions among the professions not be regarded as controlling, but rather the more elementary fact that they are simply professionals and on that basis alone to be distinguished from other groups of employees. This approach would parallel that taken in the case of craft employees where individual craft lines were not observed and the unit was established simply on the basis of a general craft distinction. P.E.R.C. No. 68, at 10-11.
The 1968 statute was designed to implement Article I, Paragraph 19 of the Constitution of 1947 declaring that "Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." Various aspects of the purpose, policy, limitations and constitutionality of the statute have been considered by this court. Lullo v. Intern. Assoc. of Fire Fighters, 55 N.J. 409 (1970); Burl. Cty. Evergreen Pk. Mental Hosp. v. Cooper, 56 N.J. 579 (1970); Bd. of Ed. of West Orange v. Wilton, 57 N.J. 404 (1971); Dunellen Bd. of Ed. v. Dunellen Ed. Assn., 64 N.J. 17 (1973). The matter of fixing negotiating units, however, has not been considered by us at any length except *242 as to the bearing on the concept of "community of interest" of the inclusion of supervisory employees in a unit, see Bd. of Ed. of West Orange v. Wilton, supra  a matter not of instant concern.
Our statute is not an isolated phenomenon in the area of labor relations of public employees. New Jersey in common with most of the country has in recent years experienced the pains of the conflict between rising expectations of people in the public employ and the strain of fiscal pressures on government at every level. Some 36 states now have statutes giving at least some public employees the right to organize and negotiate or bargain with government. By executive orders promulgated in 1962 and 1969 such a system, administered by the Secretary of Labor, has also been operative as to federal employees. In almost all of these systems, as in New Jersey, a board or officer is authorized to fix an appropriate unit for negotiations if the parties cannot agree thereon. For a comprehensive history of the development of legislation and administrative procedures dealing with public employee labor relations, see Blair, "State Legislative Control over the Conditions of Public Employment: Defining the Scope of Collective Bargaining for State and Municipal Employees", 26 Vanderbilt L. Rev. 1 (1973).
L. 1968, c. 303 was structured as an amendment of and supplement to the prior Labor Mediation Act, enacted in 1941 (L. 1941, c. 100), which dealt only with conciliation of labor disputes in the private sector. There are several clues to a supervening legislative policy underlying Chapter 303 that the peculiar needs, requirements and interests of the general public and of government as an employer should be accorded attention coordinate with that of employee rights in the interpretation and administration of the act. The legislation creating the study commission whose report and recommendations preceded enactment of Chapter 303 stated in its preamble (L. 1966, c. 170) that the procedure to be developed "must take into consideration the rights and needs of public and school employees as well as a recognition of *243 the legitimate concerns of the public in the efficient operation of government". It was also stated in the report of that Commission that because of the variety of governmental units involved there was a need for a "flexible, evolutionary approach to legislation". Negotiating units should be determined in accordance with the community of interest among employees "and the structure of the appointing authorities".
The declaration of policy in the Employer-Employee Relations Act itself avers "that the interests and rights of the consumers and the people of the State, while not direct parties thereto [labor disputes], should always be considered, respected and protected * * *." N.J.S.A. 34:13A-2. Further, no provision of the act is to "annual or modify any statute or statutes of this State". N.J.S.A. 34:13A-8.1. The provisions detailing the procedure in collective negotiations specify that "[n]othing herein shall be construed to deny to any individual employee his rights under Civil Service laws or regulations." N.J.S.A. 34:13A-5.3. And, as we have recently held as to the area of employees in the educational field, mandatory negotiations are precluded as to subject matter "predominantly of educational policy within management's exclusive prerogatives" even though also incidentally touching terms and conditions of employment. Dunellen Bd. of Ed. v. Dunellen Ed. Assn., supra (64 N.J. at 30).
We turn to the statutory provisions directly touching upon determination of negotiating units. As noted above, the Commission is not to intervene therein "except in the event of a dispute", as here. N.J.S.A. 34:13A-5.3. The most pointed indication of a criterion of appropriateness of unit set forth in the act is the provision: `The negotiating unit shall be defined with due regard for the community of interest among the employees concerned * * *." Ibid. When a unit is either agreed upon by the parties or designated by the Commission, representatives selected by the employees in an election conducted by the Commission become the exclusive representatives of the entire unit "for collective negotiation concerning *244 the terms and conditions of employment". Ibid. Where there is no exclusive representative employees may present grievances personally or through a representative or organization. The existence of an exclusive representative for a unit does not preclude other organizations from presenting their views to an employer-official provided the majority representative is informed of the meeting; any changes in terms and conditions are made only through negotiations with the majority representative; and a minority organization may not present or process grievances. N.J.S.A. 34:13A-5.3.
Supervisors with the right to hire, discharge or discipline employees or to so recommend shall not except in special circumstances have the right of representation by an organization that admits non-supervisory personnel. A similar provision applies to policemen. N.J.S.A. 34:13A-5.3.
N.J.S.A. 34:13A-6(d) provides:
* * * The division shall decide in each instance which unit of employees is appropriate for collective negotiation, provided that, except where dictated by established practice, prior agreement, or special circumstances, no unit shall be appropriate which includes (1) both supervisors and nonsupervisors, (2) both professional and nonprofessional employees unless a majority of such professional employees vote for inclusion in such unit or, (3) both craft and noncraft employees unless a majority of such craft employees vote for inclusion in such unit. * * *.
The term "community of interest" of employees was invented by the National Labor Relations Board as a shorthand label for some of the statutory criteria for unit determination. The expression is not found in the statute which defines the Board's duties in respect of adjudication of appropriate bargaining units in the private sector. 29 U.S.C.A. § 159(b).[2]
*245 Many of the state statutes dealing with determination of negotiating units in the public sector have used the term "community of interest" but with varying shades of emphasis and subject to some diversity in employment of supplementary or additional criteria. See N.Y. Civ. Serv. Laws §§ 200-214 (McKinney's Consol. Laws, c. 7, 1973); Mass. Ann. Laws, ch. 149, § 178F(3) (1971); Pa. Stat. Ann. tit. 43, §§ 1101.101-1101.2301 (Supp. 1973). And see the broad spectrum of public employees regulations concerning units, formulated by statute or executive order, discussed in Shaw and Clark, "Determination of Appropriate Bargaining Units in the Public Sector: Legal and Practical Problems", 51 Oreg. L. Rev. 151 (1971).
The petitioning organizations argue strongly that precedents in the federal labor relations area by the National Labor Relations Board support their contention that the factor of community of interest of employees compels recognition of their proposed units.
It was pointed out in Bd. of Ed. of West Orange v. Wilton, supra, that, "The 1969 Report of the Advisory Commission on Inter-governmental Relations ... mentions `community of interest' as a major criterion used in determining the appropriate unit for purposes of collective negotiation. But it refers to the test as a `somewhat elusive concept'." 57 N.J. at 420. A useful summary of the factors elucidated in the private sector cases as bearing upon community of interest is set forth in Wilton (Id. at 420-421) as follows:
*246 In the private sector, the cases regard unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations as pointing to common interest. They regard similarity of obligation to the employer as a factor; likewise similarity of working conditions; they consider the possible disruptive effect on employer-employee relations if the employees involved are admitted to one unit. They decide whether the group involved will operate cohesively as a unit; whether the unit will probably be effective in the public quest for industrial peace. Community of interest has been regarded as identity of interest. An important consideration is whether an employee sought to be included in a unit is one from whom the other employees may need protection; whether his inclusion will involve a potential conflict of interest.
Administration of the federal act by the National Labor Relations Board, however, has been attended by the widest flexibility in application of such criteria as those mentioned above as the Board's concepts of sound labor relations policy have evolved and changed. For example, certified industrial-type unions contain, lumped together in single bargaining units, employees of wide differences in job-type, on the justification, among others, of the fact that all the employees come together as an integrated whole to serve the production process of the employer; cf. Florida Enterprises, Inc., 125 N.L.R.B. 258, 45 L.R.R.M. 1114 (1959); N.L.R.B. v. Cumberland Farms, Inc. 396 F.2d 866 (1st Cir.), cert. den. 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968). Note also the change in the Board policy of approving small units of insurance workers in separate district offices to a later policy of preference of units of statewide scope. See Note, "The Board and Section 9(c) (5): Multilocation and Single-Location Bargaining Units in the Insurance and Retail Industries", 79 Harv. L. Rev. 811, 813-817 (1966). A similar pattern of fluctuation occurred in the retail chainstore industry. Id., at 817-819. But there was a later reversion to the original policy. Sheraton-Kauai Corporation v. N.L.R.B., 429 F.2d 1352, 1355 (9th Cir.1970).
Indeed the United States Supreme Court has said:
The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none *247 should be by decision. It involves of necessity a large measure of informed discretion * * *. Packard Motor Co. v. National Labor Relations Board, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040, 1050 (1947).
It is thus apparent that there is no ready means of confident application of National Labor Relations Board precedents as to the factor of community of interest even in other Labor Board cases, much less in the substantially different area of labor relations in the public sector, and particularly that encompassed by our own statute. The strong emphasis in the pertinent language of the Labor Management Relations Act is on assuring employees in industry "the fullest freedom in exercising the rights guaranteed by" the act. 29 U.S.C.A. § 159(b). This contrasts with the monition in our own statute, absent from the federal act, that the interests and rights of the people of the State at large, although not parties to any particular labor dispute, shall "always be considered, respected and protected". N.J.S.A. 34:13A-2. As we have already said above, there is here manifested a special concern by our Legislature with the bargaining interests and negotiating position of the State as an employer  a factor not of particular weight with the National Labor Relations Board or the federal courts in relation to private sector employees. See, e.g., N.L.R.B. v. Western and Southern Life Insurance Company, 391 F.2d 119, 123 (3d Cir.), cert. den. 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 439 (1968); N.L.R.B. v. Li'l General Stores, Inc., 422 F.2d 571, 574 (5th Cir.1970); Michigan Hospital Service Corp. v. N.L.R.B., 472 F.2d 293, 296 (6th Cir.1972); cf. N.L.R.B. v. Pinkerton's, Inc., 428 F.2d 479, 481 (6th Cir.1970).
We find a strong analogy to our present problem in the legislative, administrative and judical treatment of the subject of unit determination for public employees in the state of New York. The able Governor's Committee which formulated the recommendations eventuating in New York's Public Employees Fair Employment Act  the so-called Taylor Law  pointed out that unit determination of groups with *248 which government had to deal affected its administrative tasks in many ways  the number of organizations to deal with; the problem of affording equitable treatment to all; and the variety of negotiating results which must be integrated into a pattern of terms of employment and their budgeting implications. The decision on units "determines how many chances there are that negotiated terms for one group will result in a sense of injustice or inequity to another". Report of Governor's Committee on Public Employee Relations, State of New York, Final Report (March 31, 1966), p. 27.
As enacted, the New York statute, N.Y. Civ. Serv. Laws §§ 200-214 (McKinney 1973), set forth the following standards for guiding the Board (PERB) in making unit determinations:
"(a) the definition of the unit shall correspond to a community of interest among the employees to be included in the unit;
(b) the officials of government at the level of the unit shall have the power to agree, or to make effective recommendations to other administrative authority or the legislative body with respect to, the terms and conditions of employment upon which the employees desire to negotiate; and
(c) the unit shall be compatible with the joint responsibilities of the public employer and public employees to serve the public." Id., § 207(1) (a)-(c).
We regard item (c) above as clearly implicit in our own statute for the reasons we have set out above. In State of New York, Case Nos. C-0002 et al. (Nov. 27, 1968), PERB was called upon to determine appropriate negotiating units for the State's 167,000 employees. As against a State request for three units: (1) professional employees of the State University; (2) state police; and (3) a general unit of the remaining 149,270 employees (except for militia and management), a position supported by the Civil Service Employees Association, a number of unions sought some 25 different units, including one for registered nurses. PERB decided upon five negotiating units: (1) Operational Services Unit; (2) Security Services Unit; (3) Institutional Services *249 Unit; (4) Administrative Services Unit; and (5) Professional, Scientific and Technical Services Unit. The occupations involved in the 25 separate units requested by the unions were deemed too diverse to permit of "meaningful representation" in a single statewide unit. However, PERB stated, on the other hand:
We believe that the statutory criteria that "the unit shall be compatible with the joint responsibilities of the public employer and public employees to serve the public" ... requires us to designate negotiating units which provide the employer with a comprehensive and coherent pattern for collective negotiations. Moreover, we believe that this statutory standard requires the designation of as small a number of units as possible consistent with the overriding requirement that the employees be permitted to form organizations of their own choosing to represent them in a meaningful and effective manner. It is our conviction that the approach of the Director of Representation in designating a limited number of negotiating units, each consisting of families of occupations, is reasonably designed to achieve this goal.
On appeals by both the State and the several unions involved the Appellate Division of the Supreme Court affirmed on the ground that the determination was rational and adequately supported by the evidence. Civil Service Employees Association v. Helsby, 32 A.D. 131, 300 N.Y.S.2d 424 (1969). The Court of Appeals affirmed on the opinion of the Appellate Division. 25 N.Y.2d 842, 303 N.Y.S.2d 690, 250 N.E.2d 731 (1969).
It is apparent that the basic determinations of the New York agency in relation to units of professional employees is essentially the same as that which the State urged in the present case and which, by plain implication, PERC approved here.[3] We have heretofore recognized "[t]he considerable *250 parallelism between the New York statute and our own." Burl. Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra (56 N.J. at 596).
The distinct tendency in recent legislation is to emphasize the public interest and to avoid undue fragmentation of negotiating units in the public sector. Thus, by amendment on October 31, 1969 of the executive order regulating labor relations of federal employees, there was added the requirement, substantially similar to that in the New York statute, that the unit "promote effective dealings and efficiency of agency operations". Executive Order 11491, § 10(b), 3 C.F.R. 262, 267 (1973); 5 U.S.C.A. § 7301 (Supp. 1973). The Pennsylvania and Kansas statutes expressly require their administrative boards to consider the effects of "over-fragmentation". Pa. Stat. Ann. tit. 43, § 1101.604(1) (ii) (Supp. 1973); Kan. Stat. Ann. § 75-4327(e) (Supp. 1972). Hawaii has gone so far as to establish a small number of statewide bargaining units legislatively. Hawaii Rev. Laws § 89-1 et seq., § 89-6 (Supp. 1972). Aside from the presently noteworthy fact that an optional unit was designated for registered nurses, all other professional and scientific employees were collectively designated as another optional unit, subject to specified qualifications. Ibid.
The commentators in this field almost unanimously agree that negotiating units in the public sector should be larger and less fragmented than industrial units have been. Shaw *251 and Clark, op. cit. supra (51 Oreg. L. Rev. 151); Edwards, "The Developing Labor Relations Law in the Public Sector," 10 Duquesne U.L. Rev. 357 (1972). Sullivan, "Appropriate Unit Determinations in Public Employee Collective Bargaining", 19 Mercer L. Rev. 402 (1968); Rock, "The Appropriate Unit Question in the Public Service: The Problem of Proliferation", 67 Mich. L. Rev. 1001 (1969); Anderson, "Public Employee Collective Bargaining: The Changing of the Establishment", 7 Wake Forest L. Rev. 175 (1971).
Cogent justifications for that policy have been advanced. The level of official ability to make or effectively recommend negotiating decisions for the public employer rises when the unit is large rather than small. Rock,[4] op. cit. supra 67 Mich. L. Rev. at 1006, 1007. Further, this conduces to timely decisions coordinate with budget making. Ibid. Fortunately, the institutionalization of the negotiating process for our state government by creation of the Governor's Office of Employee Relations (and the correlative Policy Council mentioned above) has reduced the magnitude of the administrative problems inherent in conducting negotiations for the State as an employer. But even so, as the testimony herein makes clear, the state negotiators still face a complex task. They must consult on wage scales with the Civil Service Commission; with the Office of the Budget and the Legislative Appropriations Committee on any proposals involving increased fiscal outlay; with the Civil Service Commission again on those aspects of working conditions or grievances within its purview (hours, vacations, sick pay, transfers, promotions, demotions, disciplinary procedures, etc.) and with the Legislature itself on any proposals which might involve betterment of pensions and similar fringe benefits fixed by legislation.[5] See Wellington and Winter, "Structuring *252 Collective Bargaining in Public Employment", 79 Yale L.J. 805, 861-864 (1970).
Some of the commentaries cited above have stressed that if it were necessary for the public employer to deal with too many separate employee bargaining units, each frequently advancing competitive claims and demands, the whole process could well bog down on the public employer's end of the negotiating process, to the negation of statutory policies such as ours (N.J.S.A. 34:13A-2) for "prompt settlement of labor disputes", prevention of "economic and public waste" and promotion of "permanent ... public and private employer-employee peace", as well as to the prejudice of the general public interest.
It is further evident, as the State has argued, that with the narrowing of differences in areas of negotiation, as between roughly comparable categories of public employees, consequent upon civil-service compensation scales and regulations of working conditions along lines of relative uniformity, the need for separate representation for groups having arguably disparate interests is greatly reduced over what it would be in the private sector. Cf. Bd. of Ed. of West Orange v. Wilton, supra (57 N.J. at 420).
Nothing we have said is intended to suggest that a respectable if not persuasive case for separate representation has not been advanced by the petitioning organizations, particularly the registered nurses. See Consolidated Vultee Aircraft Corporation, 108 N.L.R.B. 591, 34 L.R.R.M. 1044 (1954) and a few other similar Labor Board cases, establishing a separate unit for nurses in an industrial concern. But the concepts of appropriateness of unit and community of interest are necessarily very elastic, and the whole history of this subject both in the private and public areas teaches that a great degree of discretion must be reposed in the *253 agency charged by statute with decision in the particular case. Moreover, determinations therein are more likely than in other administrative fields to be formed by subjective value judgments, frequently difficult to articulate with precision, concerning the relative weight of various relevant criteria. See Rock, op. cit. supra (67 Mich. L. Rev. at 1005).
The registered nurses stress that they are organized and have a negotiating history with state officials; also that there is no organization now proposing to represent all 6,300 professional employees of the State. These are clearly relevant considerations, but organizational status is not controlling, even in the private sector. 29 U.S.C.A. § 159(c) (5). In accord as to federal employees: Executive Order No. 11491, § 10(b), 3 C.F.R. 262, 267 (1973); 5 U.S.C.A. § 7301 (Supp. 1973). Besides, the pendency of these cases, since 1969 in one instance and since 1970 in the other, may well have dissuaded any initiative toward organizing the professional employees en masse. If, after rendition of our determination herein, there continues for a substantial period to be no movement in that direction, it will be open to any interested organization or group of professional employees to lay the matter of appropriate units before the Commission anew. Clearly, the ultimate organization of all employees who desire collective negotiation with the State is a logical objective of the public policy underlying the statute.[6]
The registered nurse petitioners have attacked the determination of PERC on the additional ground that in effect it adopted the position of the State before the hearing officer  i.e., that it was the Commission's function to determine the *254 "most appropriate" unit and that PERC should reject the nurses' organization, even though "appropriate", because a statewide unit of all professionals was the "most appropriate". In support of their argument that such an approach is incorrect petitioners cite Morand Brothers Beverage Co., 91 N.L.R.B. 409, 26 L.R.R.M. 1501 (1950) and a scattering of other Labor Board and court cases which cite Morand.
The language from Morand relied upon is as follows (91 N.L.R.B. at 418):
There is nothing in the statute which requires that the unit for bargaining be the only appropriate unit or the ultimate unit or the most appropriate unit; the Act requires only that the unit be "appropriate." (Emphasis by the Board.)[7]
It seems to us that the language as to "most appropriate unit" in Morand is, at the least, misleading, and very possibly, entirely incorrect. It seems directly refuted by the rationale of the decision in N.L.R.B. v. Pittsburgh Plate *255 Glass Co., 270 F.2d 167, 172-173 (4th Cir.), cert. den. 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960), wherein the court said that under the Labor Management Relations Act the Board had a:
power and duty to decide in each case what bargaining unit is most appropriate to assure to the employees the fullest freedom in collective bargaining, whether it be an employer unit, craft unit, plant unit or subdivision thereof.
The court further stated that the effect of amended Section 9(b) (2) of the act (29 U.S.C.A. § 159) was to direct the Board "to re-examine each case on its merits and leaves it free to select that unit which it deems best suited to accomplish the statutory purposes".[8]Ibid. In accord: Executive Bd., Local 1302 v. United Bro. of Carpenters, etc., 339 F. Supp. 613, 621-622 (D. Conn. 1972), rev'd on other grounds, 477 F.2d 612 (2d Cir.1973). Shaw and Clark have expressed the view that "only the most appropriate unit should be established in the public sector". Op. cit. supra (51 Oreg. L. Rev. at 124) (Emphasis in original). This standard is expressly incorporated in the New Mexico administrative regulations. New Mexico State Personnel Board, "Regulations for the Conduct of Employee-Management Relations" (1972), pp. 5, 7, 8.
In the light of the plain language of the federal statute delegating unit determination to the National Labor Relations Board it is difficult to understand an argument  that which we understand petitioners to make  that despite a Board finding that one unit proposal better meets the statutory criteria than a second it is proper for the Board to designate the latter. We know of no case at either agency or court level so holding, although there are decisions to the *256 effect that in a given set of circumstances a determination of the unit may be made to depend on the expressed election of the employees in a particular location or employment setting [i.e., the election, in effect, carries the issue as to what unit is most appropriate]. See Sheraton-Kauai Corporation v. N.L.R.B., supra (429 F.2d 1352).
From the point of view of a court reviewing a Board decision on appropriate unit, the matter was succinctly put in Wheeler-Van Label Company v. N.L.R.B., 408 F.2d 613, 617 (2d Cir.1969):
The question before us is not whether the composing area unit is the only appropriate unit for these employees. The Board's duty is to choose an appropriate unit, and it may select among several appropriate ones. (Emphasis in the original),
providing its selection is not arbitrary or capricious (408 F. 2d at 617).
So, too, as we have implied above, either of the petitioning groups of professional employees involved in this litigation could well have been found to be appropriate negotiating units. However, we think it clearly implicit that the Commission was here holding, whatever the avowal otherwise in the appellate briefs filed on its behalf (see note 6, supra), that the petitioning units would be disapproved because the Commission found that the inclusion of the employees in question in a statewide unit of all professionals would, as the State was arguing before it, better or more appropriately serve the purposes and meet the objectives of the statute.[9]
*257 Whatever may be the correct rule under the federal act, we have no doubt that under our act PERC was under a duty to make a determination as to the most appropriate unit. The act clearly directs that in event of a dispute the Commission shall "decide in each instance which unit of employees is appropriate for collective negotiation". N.J.S.A. 34:13A-6(d). (Emphasis added.) Formal hearings may be conducted "to determine the appropriate unit". Ibid. (Emphasis added). Since, as already indicated, more than one proposed unit may well have attributes of appropriateness, and it is essential for the functioning of the statutory scheme that a designation of a single unit be arrived at in a contested case, as here, the Commission had no choice but to determine the unit it deemed best and accordingly to designate either a unit proposed by one of the parties or to specify one of its own conception, as guided by the evidence, its expertise and the statutory criteria. It did the former in this instance by deciding in favor of the unit proposed by the State. In a case such as this, with proposals for representation on behalf of 2,000 employees awaiting action, it would have been patently contrary to the statutory scheme for the Commission to have rejected the proposals submitted, including that proposed by the State, and to make no designation whatever.
The contention of the petitioning organizations that designation of a statewide unit of professional employees ignores the statutory criterion of "due regard" for the "community of interest" of the employees concerned cannot be sustained. What is called for on the part of the Commission is "due regard for", not exclusive reliance upon such community of interest. We have shown above that the interests of the employer and of the public at large are also relevant factors. In any event, we conceive the State is not unreasonable in arguing that there is a common interest and character in relation to professional employees, as such, with respect to their status, training and functions, as well as with respect *258 to their fairly common expectations concerning the range of compensation and working conditions negotiable on their behalf, in contradistinction to other groupings of employees. Finally, the very allusion in the statute to units comprised of "professional employees", N.J.S.A. 34:13A-6(d), supports the idea that due regard for community of interest of employees could, in the discretion of the Commission, be founded either on units of separate professions or of all professions collectively.[10]
As to the suggestion that in a general professional employees unit, the special problems and interests of the registered nurses will be submerged and inadequately dealt with by the common representative, this is always a problem where discrete categories are placed in a common negotiating unit. It must be assumed, however, except where shown to the contrary in a particular case, that the common representative will perform its duty fairly in respect of all within the unit and exercise its good faith judgment as to when or whether different characteristics within the group warrant different demands. See Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192, 203, 204, 65 S.Ct. 226, 232, 233, 89 L.Ed. 173, 183, 184 (1944).
There are no contested issues as to operative facts in this case. The matter is simply one as to the reasonableness of a quasi-legislative policy decision by a statutory administrative agency in the area of its duly delegated authority. The role of judicial review in that regard is thoroughly settled. The administrative determination will stand unless it is clearly demonstrated to be arbitrary or capricious. Flanagan v. Civil Service Dept., 29 N.J. 1, 12 (1959). This is the same rule as applies to judicial review of bargaining unit determinations by the National Labor Relations Board. Packard *259 Motor Co. v. National Labor Relations Board, supra (330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040). Moreover, where, as here, a substantial element of agency expertise is implicated, due weight should be accorded thereto on judicial review. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).
While the issues before the Commission in the instant case were far reaching, provocative and sharply debatable, we are unable to say that the Commission's determination of them, as we have rationalized that decision in the foregoing discussion, is in any sense arbitrary or unreasonable, or unfounded in the statutory criteria for determination and the pervading public policy underlying the act, express or clearly implied. Moreover, it is particularly important in the early phases of the development of experience in this relatively new area of the administrative process that a broad and flexible latitude of interpretation of the statute be accorded the agency charged with its implementation.
We have given consideration to the other contentions made on behalf of the petitioning organizations, including the claims of denial of the constitutional rights of the registered nurses under Article I, Paragraph 19 of the Constitution and alleged failure of compliance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., in relation to the findings and conclusions by the Commission, and we find them all without merit.
The judgment of the Appellate Division in the registered nurses' case is reversed and the decision of PERC therein reinstated; the decision of PERC in the educators' case is affirmed. No costs.
For affirmance in educators' case  Acting Chief Justice JACOBS, Justices HALL, SULLIVAN, PASHMAN and CLIFFORD and Judges CONFORD and COLLESTER  7.
Opposed  None.
*260 For reversal in the nurses' case  Acting Chief Justice JACOBS, Justices HALL, SULLIVAN, PASHMAN and CLIFFORD and Judges CONFORD and COLLESTER  7.
Opposed  None.
NOTES
[1] Health, Care and Rehabilitation Services in April 1971 contained 7,650 employees; Operations, Maintenance and Services, as of April 1971, 3,900 employees; and Craft Employees, as of April 1971, 1,125 employees.
[2] The material portion of the section reads:

(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this sub-chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation * * *.
[3] However, New Jersey's negotiating units of state employees, as they recently stood (apart from the disputed category of professional employees), in addition to the three categories mentioned in note 1, supra, which arose out of the decision in Neuropsychiatric Institute, PERC. No. 50, supra, are considerably more diversified than those of New York under the PERB decision. They are:

 Administrative and Clerical Services  10,500 Employees
 Primary Level Supervisors  4,500 "
 New Jersey State Colleges  2,800 "
 Law Enforcement (excluding State Police)  1,750 "
 Inspection and Security  1,500 "
 State Troopers  1,000 "
 Non-Commissioned State Police Officers  400 "
 College of Medicine and Dentistry (Faculty)  225 "
 College of Medicine and Dentistry
 (White and Blue Collar)  1,000 "

Thus, assuming professional employees are eventually grouped in a single unit, there will be a total of thirteen negotiating units of state employees, subject, of course, to future changes or additions.
[4] Eli Rock, an arbitrator, was a member of the Legislative Commission which recommended enactment of the New Jersey statute.
[5] We are not here implying any fixed views as to what subject matter is necessarily negotiable under the statutory rubric of "terms and conditions" of employment. The matters mentioned are typical of those projected by labor negotiators and generally dealt with by employer representatives.
[6] The briefs filed by PERC on these appeals disclaim its having decided that all the 6.300 professional employees must necessarily constitute a single unit. Our reading of the decision itself is that it rejected the proposed units because an all-encompassing professionals' unit would represent the statutory optimum. See infra. In any event, nothing in our holding or in the decision of PERC precludes a later determination, under circumstances then existing, authorizing units of less than the total body of professional employees.
[7] In Morand the question arose in the context of cross-claims by a union and an association of employers of unfair labor practice. There had been previous bargaining by the association as the employer unit, and thereafter the union struck an individual employer. The Board held in favor of the union on several grounds, using the language mentioned above, but it did not render a holding that the association was the "most appropriate" unit. The Board confined its determination to "the limited circumstances where negotiations on a multiemployer basis have broken down" (91 N.L.R.B. at 418).

Petitioners cite Bowman et al. v. Hackensack Hospital Assoc., 116 N.J. Super. 260, 277 (Ch. Div. 1971) and Local 1199 v. Mountainside Hospital, 121 N.J. Super. 221, 224 (Ch. Div. 1972) as indorsing the Morand language concerning "most appropriate" units. Both of these are private sector cases. In Bowman the court compared the contesting units proffered and held, in effect, that one of them was preferable to the other although both might be regarded as "appropriate". In Mountainside the court found the merits as to the contesting units equally balanced and on that basis alone held the decision should lie with the election of the members of the smaller unit proposed. Neither decision supports petitioners on the issue under discussion.
[8] The amendment provided that the Board should not decide a craft unit was inappropriate on the ground that a different unit had been established by a prior Board determination, unless a majority of the craft voted against separate representation.
[9] The key statement in this regard in the PERC decision is: "At this point in the statute's development the Commission is inclined to believe that the purposes of the Act will be better served if, when dealing with professional employees, the individual distinctions among the professions not be regarded as controlling, but rather the more elementary fact that they are simply professionals and on that basis alone to be distinguished from other groups of employees." (Emphasis ours.) P.E.R.C. No. 68, at 10.
[10] The special provision in our statute regulating units of professionals is found in almost identical language in the Labor Management Relations Act, 29 U.S.C.A. § 159(b), in many if not most of the state statutes, and in the Executive Order for federal employees cited above.