IN THE MATTER OF STATE OF NEW JERSEY, PUBLIC EMPLOYER–RESPONDENT.

IN THE MATTER OF NEW JERSEY STATE FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION, PETITIONER–APPELLANT.

IN THE MATTER OF COMMUNICATIONS WORKERS OF AMERICA, LOCAL 1037 & LOCAL 195, IFPTE, INTERVENORS–RESPONDENTS–CROSS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted October 28, 1987—Decided January 27, 1988.

Before Judges FURMAN, BRODY and LONG.

*Rinaldo & Rinaldo,* attorneys for appellant (*Anthony D. Rinaldo, Jr.* and *John L. Maddalena,* of counsel; *Anthony D. Rinaldo* on the brief).

*W. Cary Edwards,* Attorney General, attorney for respondent State of New Jersey (*Michael L. Diller,* Deputy Attorney General, on the letter brief).

*Steven P. Weissman,* attorney for intervenor-respondent Communications Workers of America, Local 1037.

*Oxfeld, Cohen & Blunda,* attorneys for intervenor-respondent Local 195, IFPTE (*Sanford R. Oxfeld* of counsel; *Reba Carmel* on the brief).

*Robert E. Anderson,* General Counsel for the Public Employment Relations Commission, filed a statement in lieu of brief.

PER CURIAM.

Petitioner New Jersey State Firemen's Mutual Benevolent Association (FMBA) appeals from the denial of its petition to the Public Employment Relations Commission (PERC) for certification as public employee representative of two negotiating units, one of 60 nonsupervisory state-employed firefighters and one of 25 supervisory state-employed firefighters (state firefighters). The state firefighters are presently members of two negotiating units within the Communications Workers of America (CWA), Local 1037, and two negotiating units within the International Federation of Professional and Technical Engineers (IFPTE), Local 195, each of which contains several thousand members and is horizontally organized among state professional and supervisory employees.

CWA and IFPTE have intervened and cross-appeal from PERC's holding that pursuant to *N.J.S.A.* 34:13A–14 "a presumption exists" that firefighters should be severed from a mixed negotiating unit of firefighters and non-firefighters. We agree with PERC that there is a presumption in favor of severability of firefighters but disagree with its application by PERC on this record. Accordingly, we dismiss both cross-appeals. As to the main issue on appeal, we reverse.

*N.J.S.A.* 34:13A–14 provides for the right of compulsory arbitration for police and firefighters:

> It is the public policy of this State that in public fire and police departments, where public employees do not enjoy the right to strike, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed.

It is undisputed that the state firefighters here are "firefighting employees" entitled to compulsory arbitration, if members of a separate negotiating unit. *N.J.S.A.* 34:13A–15 limits compulsory arbitration for firefighters as follows:

> "Public fire department" means any department of a municipality, county, fire district or the State or any agency thereof having employees engaged in

firefighting provided that such firefighting employees are included in a negotiating unit exclusively comprised of firefighting employees.

That statute was enacted in 1977, nine years after enactment of the New Jersey Employer–Employee Relations Act. *N.J.S.A.* 34:13A–5.3, which was adopted as part of the 1968 enactment, provides that, "except where established practice, prior agreement, or special circumstances dictate the contrary, no policeman shall have the right to join an employee organization that admits employees other than policemen to membership." No parallel legislative proscription bars firefighters from membership in mixed negotiating units.

In our view, the provision in *N.J.S.A.* 34:13A–15 limiting the right of compulsory arbitration to firefighters in separate negotiating units was adopted by the legislature in recognition that, at that time, some firefighters were in mixed negotiating units and might voluntarily choose to remain in them. However, we cannot read into *N.J.S.A.* 34:13A–15 a legislative intent that firefighters in mixed negotiating units at the time of its enactment were to be frozen permanently in such units and thereby deprived of the benefits of compulsory arbitration, in light of the strong public policy supporting compulsory arbitration for firefighters and the legislatively enacted liberal construction favoring such compulsory arbitration. The objective of compulsory arbitration under *N.J.S.A.* 34:13A–14 is to protect the public safety by assuring the availability and continuity of firefighters' services without strikes or work stoppages. The PERC decision on appeal does not go as far as to preclude effectuation of that policy solely because of a preexisting mixed negotiating unit, but it does deny the state-employed firefighters severance into separate negotiating units, based upon some degree of community of interest between firefighters and non-firefighters in the mixed negotiating units, a history of stability of labor relations and of adequate representation on behalf of firefighters by the mixed negotiating units.

In deciding this case, PERC relied on its prior decision in *In re County of Hudson,* 10 *NJPER* 114 (¶ 15059 1984), in which it

denied a petition for severance into separate negotiating units brought by six county-employed institutional firefighters. In that case, PERC articulated an approach which keyed the issue to labor stability and evaluated the firefighters' severance petition against the following standards:

> the length and stability of the negotiations history concerning the mixed unit; the adequacy of representation and incidents of unfair representation affecting firefighters in that unit; the composition and community of interest of the mixed unit; and the nature of services rendered by the employees in question. (footnote omitted) [*Id.* at 116]

These standards were applied in this case as well and it is here that we think PERC made an error.

In our view, although PERC gave lip service to the presumptive right of firefighters to establish separate negotiating units pursuant to *N.J.S.A.* 34:13A–14, its application of the *Hudson* standards eviscerated the presumption entirely. In essence, PERC took the position that because there were no discernible problems with the broad-based unit (i.e. no history of discord or inadequacy of representation), because there was some community of interest existing between the firemen and the other employees in the broad based unit and because the firemen regularly interacted with those other employees, the presumption created by *N.J.S.A.* 34:13A–14 was overcome. There are a number of difficulties with this analysis. The first is that by effectively concluding here and in *Hudson* that the mixed unit was *not demonstrated* to be inappropriate, PERC placed the burden on the firefighters to justify the need for severance instead of placing it where it belonged, on the shoulders of those opposing severance.

Second, PERC failed to accord due weight to the preference. In effect, it concluded that severance should be denied because the firefighters were already represented by an acceptable negotiating unit. That is not the standard. The preference simply cannot be overcome by a showing that the broad based unit is "good" or "just as good" as the preferred severed unit. If that were the case, the preference would be no preference at all. Once an application for severance is made, it must be

granted absent a showing by the parties adverse to severance that the non-preferred mixed unit advances the goal of labor stability more effectively or, put another way, that the preferred unit would negatively impact on such stability. This, in turn, places the burden of overcoming the preference where it belongs.

The next leg of the problem with PERC's approach concerns the specific standards it enunciated to evaluate a severance petition. The standards, as PERC acknowledges, are to some extent, "traditional" in the labor arena and evolved within a system which recognized a preference for the existing broad based unit and a concomitant "strong distaste for the undue fragmentation of public sector negotiations units." *In Re State of New Jersey*, P.E.R.C. No. 68 (1972), aff'd *State v. Prof. Assoc. of N.J., Dept. of Ed.*, 64 *N.J.* 231 (1974). Thus, they focused on the strengths of the broad based unit. Where, as here, the preference is essentially in favor of fragmentation, the *Hudson* standards are wholly inadequate to evaluate a severed unit. Two of the *Hudson* criteria, length and stability of negotiations history and adequacy of representation cannot be applied to a negotiating unit which has not yet come into being.

Given this state of affairs and applying classic standards of appellate review to these circumstances, a flat reversal might well have been warranted. In deference to PERC's special expertise in the labor field however, we have determined that a remand is in order for PERC to reevaluate the *Hudson* standards in light of what we have said. This reassessment will have to begin with a recognition that the preference for severance in *N.J.S.A.* 34:13A–14 is something of an anomaly in the labor field and that principles which have been developed to deal with classic situations are not necessarily helpful in addressing petitions for severance under the statute. In addition, PERC must articulate an approach which properly allocates the burden to the party opposing severance. This will require an analysis of what showing with respect to the severed unit the

opposing party must establish. Given the legislative scheme, the task of opponents of severance is an extremely difficult one. Indeed, it may be that in the final analysis only those firefighters who chose to remain in mixed units will be required to do so.[1] We leave to PERC the responsibility of addressing this complex issue and developing standards which account for the legislative preference. The only guidepost for the inquiry is labor stability.

We note that the *Hudson* standards need not be discarded entirely. They may be helpful in assessing the mixed unit against which the preferred single interest unit is to be weighed in this legislatively imbalanced equation. However, even in this regard, some of the standards are of dubious value. For example, the stability of negotiations of the mixed unit is entirely inconsequential where, as here, the ultimate tool of labor stability—compulsory arbitration—will be available to the severed unit.

After PERC has completed its review, it will be required to determine how the record in this case squares with the standard it has enunciated. In the event that the standard which results from PERC's reevaluation differs markedly from the traditional one and the parties are disadvantaged by its retroactive application to this record, PERC is free to reopen the evidentiary portion of the hearing for the adduction of relevant evidence.

Because we are reversing and remanding, it is unnecessary for us to address the specific deficiencies we perceive in this evidence. One, however, is worthy of note. In our view, the hearing officer's determination of adequacy of past representation of firefighters by the mixed negotiating units is not supported by the evidence. Indeed, the hearing officer conceded

---

[1]One possible exception we can conceive is the situation in which the number of firefighters is so small (as in *Hudson* where only six firefighters existed in an overall unit of approximately 1500 county employees) that the creation of a separate unit would be an inefficient allocation of resources.

that the firefighters "had reason to be unhappy with" CWA's representation of them: CWA did not attempt to protect their bumping rights in a reduction of force but rather, to prevent layoffs of more senior employees, whether firefighters or not. The hearing officer concluded that CWA's representation of the firefighters was adequate because of "the larger gain" for the entire unit. This begs the question however, of its adequacy for the firefighters themselves. In dealing with this critical problem, CWA's representation clearly was not in the firefighters' own best interests.

Reversed and remanded.