IN THE MATTERS OF STATE OF NEW JERSEY, PUBLIC EMPLOYER–APPELLANT, AND NEW JERSEY STATE FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION, PETITIONER–RESPONDENT, AND COMMUNICATION WORKERS OF AMERICA, LOCAL 1037 AND LOCAL 195–IFPTE, INTERVENORS–APPELLANTS.

Argued November 28, 1988—Decided March 9, 1989.

*Sanford R. Oxfeld* argued the cause for appellant Local 195–IFPTE (*Oxfeld, Cohen, Blunda, Friedman, LeVine & Brooks,* attorneys).

*Steven P. Weissman* argued the cause for appellant Communications Workers of America, etc.

*Michael L. Diller,* Deputy Attorney General, argued the cause for appellant State of New Jersey (*Cary Edwards,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Robert E. Anderson,* General Counsel, argued the cause on behalf of Public Employment Relations Commission.

*Dennis J. Alessi* argued the cause for respondent (*Fox and Fox,* attorneys; *Dennis J. Alessi* and *David I. Fox,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether certain State firefighters (that is, employees of departments of State government having firefighting duties) should be included in the broad-based bargaining units representing most other state employees or be severed for representation by separate firefighter bargaining units. The case requires us to weigh competing policies underlying the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21, as amended by the Fire and Police Interest Arbitration Act, *N.J.S.A.* 34:13A–14 to –21. The Employer–Employee Relations Act establishes statutory policy for public-sector labor relations and creates a Public Employment Relations Commission (PERC), which, in addition to other duties, determines the appropriate bargaining units for public employees. *N.J.S.A.* 34:13A–5.2. The Fire and Police Interest Arbitration Act provides for compulsory arbitration of salary disputes between public employers and police and "firefighters * * * included in a negotiating unit exclusively comprised of firefighting employees." *N.J.S.A.* 34:13A–15. For convenience, we shall refer to the amended New Jersey Employer–Employee Relations Act as the "PERC law." Although the PERC law provides that police may not ordinarily join an employee organization that admits employees other than police to member-

ship, *N.J.S.A.* 34:13A–5.3, there is no similar prohibition against firemen joining mixed negotiating units.

We hold that it was at least reasonable for PERC to conclude that the State firefighters need not be severed. PERC found that the firefighters "interact more frequently with nonfirefighters in their respective departments than they do with the firefighters in other departments," and they would not have "a significantly greater community of interest in the petitioned-for firefighter units as measured against the community of interest which exists in the broad-based State employee units where the firefighters are presently situated." PERC additionally found that the firefighters' current representation has not been wanting. On this record PERC's denial of the firefighters' petition for severance from their existing units does not violate legislative intent as expressed in the PERC law. We therefore reverse the judgment of the Appellate Division invalidating PERC's determination that the State firefighters should remain so represented, and reinstate PERC's judgment.

I

For purposes of this appeal, we shall incorporate the factual version of the New Jersey State Firemen's Mutual Benevolent Association (FMBA), the organization that seeks to represent the State firefighters as a separate bargaining unit. (Actually, two units are proposed, one for rank-and-file and one for supervisors. We shall speak of a single unit.) The case arises from FMBA's filing of two petitions with PERC seeking to be certified as the collective-negotiations representative for ten classifications of employees of the State of New Jersey. The classifications include employees of three state departments: forest firefighters in the State Department of Environmental Protection and other firefighters in the Departments of Community Affairs and Human Services.

Most of the approximately twenty-five supervisory and sixty nonsupervisory employees included in the ten classifications are

currently divided among two units represented by the Communication Workers of America Local 1037 (CWA) and two units represented by Local 195-IFPTE (Local 195). Both CWA and Local 195 intervened in the proceedings before PERC. Each represents rank-and-file and supervisory-level negotiating units, which include both firefighting and nonfirefighting employees in many different classifications throughout the entire State bureaucracy. FMBA seeks to sever the firefighting employees from the four existing collective negotiating units in order to create two separate units consisting of firefighting supervisors and rank-and-file firefighters employed by the State in the ten classifications.

FMBA argued to PERC that separate firefighter units are necessary in order to effectuate the rights of firefighter employees under the PERC law, particularly the firefighters' entitlement to compulsory arbitration under the Police and Fire Interest Arbitration Act.[1] Essentially, FMBA argued that (1) firefighters had no community of interest with other employees of their departments, (2) the firefighters had a unique community of interest among themselves, and (3) they had not received responsible representation from their current representatives.

FMBA also asserted that these firefighters are entitled to separate negotiation units because the Legislature had declared as the public policy of the State that firefighting employees are entitled to compulsory interest arbitration inasmuch as they do

---

[1]Employees entitled to compulsory arbitration under the Interest Arbitration Act may agree with management representatives to

select any of various methods for the resolution of their contract disputes. However, the parties must notify PERC if they cannot agree upon a procedure for resolving their disputes 60 days prior to the budget submission date of the year in which the fire or police contract will take effect. *N.J.S.A.* 34:13A-16(b). * * * If the parties cannot agree upon a dispute resolution procedure within 50 days of the budget submission date, they are required to follow the particular form of final offer arbitration codified at *N.J.S.A.* 34:13A-16(d)(2).

[*Newark Firemen's Mutual Benevolent Ass'n Local No. 4 v. City of Newark*, 90 *N.J.* 44, 46–47 (1982).]

not enjoy the right to strike. According to FMBA, the interest-arbitration provisions were enacted to sustain the high morale of these employees and the efficient operation of fire departments by affording firefighting employees an alternative and binding procedure for the resolution of salary disputes. FMBA contended that this statutory right is frustrated because the firefighters are included in the broader-based collective negotiation units, which cannot avail themselves of binding interest arbitration of salary disputes. It urged that firefighters must be allowed to create separate negotiation units in order to be afforded their statutory rights to interest arbitration.

PERC's hearing officer, relying on PERC's decision in *In re County of Hudson,* 10 *NJPER* 114 (¶ 15059 1984), found that there is a presumption in favor of severing firefighting employees from broader-based collective bargaining units and creating separate bargaining units for these employees because of their entitlement to interest arbitration. Noting, however, that under PERC policy this presumption can be overcome when the record reveals that labor stability, as evidenced by a long history of successful negotiations and adequate representation, would be better served by their continued inclusion in the broad mixed unit, he recommended that the firefighters not be severed. He concluded that although all of the employees are firefighters within the meaning of the Act, the petitioned-for unit is inappropriate because (1) there had been a decade of stable collective negotiations, (2) the petitioners had not established that they possessed a unique community of interest among themselves, and (3) the petitioners had not established that the existing majority representative had failed to fairly and adequately represent them.

PERC adopted the hearing officer's report and recommendation and declined to allow severance of the firefighting employees. It noted particularly that the hearing officer had found a high degree of job contact with nonfirefighting employees in their departments, common departmental rules, facilities, working conditions and equipment, and a common supervisory chain

of command. Finally, although acknowledging that the nature of their services is unique in that they fight fires, PERC found that from a larger perspective "in contrast to local fire departments, these firefighters work in three separate departments and interact more frequently with non-firefighters in their respective departments than they do with the firefighters in other departments." *In re State of New Jersey*, 12 *NJPER* 206, 208 (¶ 17081 1986).

On appeal, the Appellate Division recognized, as did PERC, the presumption in favor of severing firefighting employees from mixed broader-based units and creating separate bargaining units consisting solely of firefighting employees. *In re State of New Jersey*, 222 *N.J.Super.* 475 (1988). However, it concluded that the *County of Hudson* standards for deciding whether to sever firefighters from a previously-existing mixed unit "eviscerated" the presumption in favor of such units. *Id.* at 479. In particular, it held that denying severance based on a stable collective-negotiations history would directly contradict the legislative policy of the Interest Arbitration Act, which amended the original Employee–Employer Relations Act. *Id.* at 480–81.

In the Appellate Division's view, PERC's recognition of labor stability as a unit's determinant would have the effect of permanently freezing firefighters in such units despite the fact that it was a happenstance that they were thus represented when the Interest Arbitration Act was enacted. *Id.* at 478. The Appellate Division would have recognized a nearly automatic opt-out, stating that "[g]iven the legislative scheme, the task of opponents of severance is an extremely difficult one. Indeed, it may be that in the final analysis only those firefighters who chose to remain in mixed units will be required to do so." *Id.* at 481. Accordingly, the Appellate Division reversed PERC's decision, remanding the matter "[i]n deference to PERC's special expertise in the labor field * * * [but directing] PERC to reevaluate the *Hudson* standards * * * [and] artic-

ulate an approach which properly allocates the burden to the party opposing severance." *Id.* at 480.

We granted the petitions for certifications of CWA, Local 195, and the State. 110 *N.J.* 513–14 (1988).

## II

We have often reviewed the history of public employee labor relations in New Jersey. Other commentators have similarly documented the subject. *E.g.*, Tener, "The Public Employment Relations Commission: The First Decade," 9 *Rut.–Cam.L.J.* 609 (1978). A few brief references will put the present matter in context.

Public employees in New Jersey have a constitutional right "to organize, present and make known to the State * * * their grievances and proposals through representatives of their own choosing." *N.J. Const. of 1947*, art. I, para. 19. "[T]o * * * flesh out the constitutional guarantees," *Lullo v. International Ass'n of Fire Fighters, Local 1066*, 55 *N.J.* 409, 416 (1970), the Legislature in 1968 enacted the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21. That act established the New Jersey Public Employment Relations Commission and gave it the authority to "make policy and establish rules and regulations concerning employer-employee relations in public employment relating to dispute settlement, grievance procedures and administration including enforcement of statutory provisions concerning representative elections and related matters." *N.J.S.A.* 34:13A–5.2. The act specifies that representatives selected by public employees shall be the exclusive representatives for collective negotiation concerning terms and conditions of employment. *N.J.S.A.* 13A–5.3. The act also authorizes PERC specifically to determine "which unit of employees is appropriate for collective negotiation." *N.J.S.A.* 34:13A–6(d).

As noted at the outset, although the Legislature has specifically provided that police may not be in mixed bargaining units,

no similar rule was established for firefighters. Whatever the rationale for the distinction between police and firefighters, the Legislature has made it. Thus, for firefighters, PERC must decide which unit of employees is appropriate for collective negotiations. Moreover, our scope of review of PERC's decision is limited.

> The role of judicial review in that regard is thoroughly settled. The administrative determination will stand unless it is clearly demonstrated to be arbitrary or capricious. * * * Moreover, where, as here, a substantial element of agency expertise is implicated, due weight should be accorded thereto on judicial review.
>
> [*State v. Professional Ass'n of New Jersey, Dep't of Educ.*, 64 *N.J.* 231, 258–59 (1974), *quoted in In re Township of Bridgewater*, 95 *N.J.* 235, 245 (1984) (citations omitted).]

In *Professional Association, supra,* this Court reviewed the organizing principles that PERC generally applies in determining appropriate bargaining units. The Court first observed that PERC's jurisdiction was discretionary, it not being required to intervene "except in the event of a dispute." 64 *N.J.* at 243 (quoting *N.J.S.A.* 34:13A–5.3). Building on principles set forth in *Board of Educ. of W. Orange v. Wilton,* 57 *N.J.* 404 (1971), we further noted that "[t]he most pointed indication of a criterion of appropriateness of unit set forth in the act is the provision: 'The negotiating unit shall be defined with due regard for the community of interest among the employees concerned * * *.' " *Professional Ass'n, supra,* 64 *N.J.* at 243 (quoting *N.J.S.A.* 34:13A–5.3). Because a criterion such as "community of interest" may be a "somewhat elusive concept," the *Professional Association* court drew on private sector analogies such as "unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations as pointing to common interest." *Id.* at 245–46 (quoting *Wilton, supra,* 57 *N.J.* at 420). Recognizing, however, that our own statute dictates "that the interests and rights of the people of the State at large, although not parties to any particular labor dispute, shall 'always be considered, respected and protected,' " *id.* at 247 (quoting *N.J.S.A.* 34:13A–2), we sustained PERC's policy determination that negotiating

units in the public sector should be less fragmented than industrial units in the private sector, larger units being both conducive to timely decision-making and more easily coordinated with budget management and legislative adjustments of pensions and similar fringe benefits. *See id.* at 251–52. In sum, we concluded that "the concepts of appropriateness of unit and community of interest are necessarily very elastic, and the whole history of this subject both in the private and public areas teaches that a great degree of discretion must be reposed in the agency charged by statute with decision in the particular case." *Id.* at 252–53.

The question of appropriate bargaining-unit size and composition is not an easy one, and has taxed the minds of analysts. *See generally* Knapp, Anatomy of a Public Sector Bargaining Unit, 35 *Case W.Res.L.Rev.* 395, 395–406 (1985) (describing the dynamics of public sector bargaining-unit determination). Concededly, there is a polarity of principle involved here. On the one hand, the constitution guarantees public employees a constitutional right "to present * * * their grievances and proposals through representatives of their own choosing." *N.J. Const. of 1947*, art. I, para. 19. On the other hand, PERC seems to assign to the public employees a representative who will seemingly best serve the administrative or managerial purposes of the employer. *See Professional Ass'n, supra,* 64 *N.J.* 231. The escape valve may be the fact that the employees can continue to present their grievances, but their exclusive representative for bargaining can be only the one designated by PERC. In any event, we deem the policy of deference to PERC's expertise outlined in *Professional Association* to be still applicable. Therefore, PERC's unit determination will be upheld absent contrary legislative intent. *See* Note, Court Adds "Public Interest" to the Criteria Used for Determining Appropriate Bargaining Units, 5 *Seton Hall L.Rev.* 937, 957 (1974) ("If it is the legislature's intent to permit more diversity in appropriate public sector bargaining units in order to reflect

the employees' preference, it is clear that more explicit unit selection criteria will have to be legislatively promulgated.").

### III

This case poses the question whether the Legislature's special recognition of interest arbitration requires a fundamental alteration of PERC's policies as they apply to State firefighters (recall that the issue does not arise for police because by law they may not join separate bargaining units). We must consider, then, the history of the Fire and Police Interest Arbitration Act.

The 1974 amendments to the PERC law, *L.* 1974, *c.* 124, provided for the creation of a Public Employee Relations Study Commission. Charged with recommending changes in the PERC law, the Commission submitted a report to the Governor and the Legislature in 1976. *Public Employer–Employee Relations Study Commission Report to the Governor and the Legislature (1976)*. "Its most significant recommendation concerned impasse procedures." Tener, *supra*, 9 *Rut.–Cam.L.J.* at 619.

Rejecting the idea of enacting different procedures for different groups of public employees, the Study Commission Report instead recommended enactment of final offer arbitration for all public employees. *See id.* at 620. Under final offer arbitration, unless the parties themselves jointly agree on an appropriate procedure, arbitrators would render an award based on the final offers submitted by the parties. *Ibid.* Then–Governor Brendan Byrne "endorsed the concept of interest arbitration as a means of providing finality to the negotiations process for all public sector disputes." *Id.* at 620 n. 67. Despite the fact that all public employees bargain without a right to strike, *Board of Educ. of Union Beach v. New Jersey Educ. Ass'n*, 53 *N.J.* 29 (1968), the Legislature, apparently particularly concerned with avoiding possible disruption in essential police and fire services, enacted interest arbitration only for police and "firefighting

employees * * * included in a negotiating unit exclusively comprised of firefighting employees." *N.J.S.A.* 34:13A–15.

In *Newark Firemen's Mut. Benevolent Ass'n, Local No. 4 v. City of Newark,* 90 *N.J.* 44 (1982), we reviewed the question whether PERC's general discretion under the enabling act extends in equal measure to administration of the Fire and Police Interest Arbitration Act. The issue arose in the context of a PERC interpretation of the meaning of "final offer" for purpose of interest arbitration. In reviewing the PERC regulation that defined the term "final offers," we held that

[t]he selection of procedures for the resolution of public sector labor disputes lies at the heart of PERC's expertise. The commission has broad experience in its regulation of unfair labor practice disputes, *see State v. Council of N.J. State College Locals,* 153 *N.J.Super.* 91 (App.Div.1977), certif. den., 78 *N.J.* 326 (1978) * * *. Deference to an administrative agency is particularly appropriate where, as here, new and innovative legislation is being put into practice. [*Id.* at 55.]

In applying its general administrative expertise to the correlation between the PERC law and the Interest Arbitration Act, PERC has developed a modified test for determining the appropriate bargaining unit for firefighters. As noted, it established this test in *County of Hudson, supra,* where it stated:

While the interest arbitration statute, standing alone, does not automatically entitle firefighters to be severed from an existing mixed unit including non-firefighters, it is certainly a potent consideration in determining whether, under all the circumstances, a separate unit should be formed in order to effectuate the overriding goal of labor stability. The public policy, *N.J.S.A.* 34:13A–14, behind the interest arbitration statute is that compulsory interest arbitration promotes labor stability and lessens the chance of a disruption of vital police and firefighting services by providing a peaceful and terminal channel for the resolution of employer-employee representative negotiations disputes. Given this public policy, it would be wrong in determining whether firefighters should be excluded from a mixed unit to limit our inquiry to traditional severance standards. Instead, we believe the Legislature's recognition that pre-existing mixed units of firefighters and non-firefighters may continue to be appropriate and its endorsement of compulsory interest arbitration as a means of ensuring labor stability may both be accomodated by establishing a presumption that firefighters should be severed from a mixed unit unless the record shows, under all the circumstances, that labor stability * * * would be better served by their continued inclusion in that unit. Among the factors to be considered are

[1.] the length and stability of the negotiations history concerning the mixed unit;

[2.]  the adequacy of representation and incidents of unfair representation affecting firefighters in that unit;

[3.]  the composition and community of interest of the mixed unit; and

[4.]  the nature of services rendered by the employees in question.

[*County of Hudson, supra,* 10 *NJPER* at 116 (paragraph structure added).]

The current case was PERC's first occasion since *Hudson* to apply its standards.  In its dismissal of the severance petitions, PERC emphasized, as did the hearing officer, that there had been no evidence of labor instability as a result of the representation;  that there was a high degree of job interaction with the nonfirefighting departmental employees;  and finally, that in contrast to local fire departments, these firefighters work in three separate departments and interact more frequently with the nonfirefighters than they do with the firefighters in other departments.  Although it recognized the strong policy considerations in support of FMBA's position, PERC concluded that the Legislature had neither precluded mixed units of firefighters and nonfirefighters nor provided for a firefighter's option.[2]

The Appellate Division believed that certain of the factors relied on by PERC were inconsistent with the legislative purpose of the Interest Arbitration Act.  However, given that there is no clear presumption of severance evident in either the history or language of the Interest Arbitration Act, we cannot agree.  The severance standard applied by PERC reasonably reconciles the values underlying the agency's traditional role in selecting bargaining units with the Legislature's special concern, as expressed in *N.J.S.A.* 34:13A–14, that firefighters receive effective representation.  On the one hand, it recognizes that on its face the Interest Arbitration Act mandates compul-

---

[2]Following PERC's decision in February 1986, legislation was passed that would have accorded firefighters the same option as police.  S. 3240 (1987). This legislation was effectively vetoed by Governor Kean, who refused to sign the bill within the required time period.  Statement of Governor Thomas H. Kean (January 19, 1988) (explaining his reasons for not signing Senate Bill No. 3240).  Because legislative inaction is generally a poor basis for statutory interpretation, *Amerada Hess Corp. v. Director, Div. of Taxation,* 107 *N.J.* 307 (1987), we draw no conclusion from this event.

sory arbitration only for non-mixed unit firefighters. On the other hand, it takes into account the fact that if mixed-unit firefighters are not receiving adequate representation, then the Legislature's concern for maintaining firefighters' high morale through assuring effective dispute resolution is clearly implicated. Therefore, the adequacy of representation and the lack of incidence of unfair representation support PERC's decision that the standards are not inappropriately applied to the present firefighters. The Appellate Division's result would be warranted if there were signs of ineffective representation or a demonstrated instability in firefighting labor-management relations. Absent such problems, the Legislature's concerns, as expressed in the Interest Arbitration Act, are adequately addressed.

In sum, the Legislature has not directed that firefighters be given an option to choose separation from the larger State bargaining units. Whether this is wise policy or not is not a matter for judicial resolution. Moreover, the scope of our review of PERC's interpretation of the Act is limited. *Bridgewater, supra,* 95 *N.J.* at 244–45; *Professional Ass'n, supra,* 64 *N.J.* at 258–59. We find that PERC's interpretation of its enabling legislation here is at least reasonable, and that its administrative determination of the appropriate bargaining units for State firefighters has not been shown to be arbitrary or capricious.

The judgment of the Appellate Division is reversed.

Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, GARIBALDI and STEIN join in this opinion.

Justice HANDLER did not participate.

*For reversal and reinstatement* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—6

*Opposed* —None.