647 A.2d 1369

NEW JERSEY TURNPIKE AUTHORITY, PETITIONER–APPEL-LANT, v. NEW JERSEY TURNPIKE SUPERVISORS ASSO-CIATION, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 1994—Decided October 14, 1994.

330

Before Judges COLEMAN, VILLANUEVA and WEFING.

*Schwartz, Tobia & Stanziale,* attorneys for appellant (*Kent A.F. Weisert* and *Frank R. Campisano,* on the brief).

*Loccke & Correia,* attorneys for respondent (*Michael J. Rappa,* of counsel and on the brief).

*Robert E. Anderson,* General Counsel, attorney for respondent New Jersey Public Employment Relations Commission (*Mr. Anderson,* on the brief).

The opinion of the court was delivered by

COLEMAN, P.J.A.D.

This case involves a gender-hostile work environment claim of sexual harassment against a supervisor. The significant issue raised is whether arbitration, as part of a contractual disciplinary grievance procedure, is preempted by state law. The Public Employment Relations Commission (PERC) held that arbitration contemplated by the collective negotiations agreement (CNA) is not preempted. We agree and affirm.

Plaintiff is the public employer of toll collectors and supervisors for the New Jersey Turnpike Authority (Turnpike Authority). See *N.J.S.A.* 34:13A–3(c). Defendant New Jersey Turnpike Supervisors Association (Supervisors Association) is the collective negotiations representative for the toll supervisors within the meaning of the New Jersey Employer–Employee Relations Act (Act), *N.J.S.A.* 34:13A–3(d). The incident involved in this appeal occurred January 13, 1992, when a female toll collector complained that she had been sexually harassed by her supervisor. When asked for details:

> she asserted that while looking for a lost pass with her supervisor, she got down on her hands and knees to search the floor; her supervisor then made a humping motion with his groin and said "Hey, look, she's on her hands and knees to me" and "you have to have a sense of humor on the Turnpike in order to survive"; and she became traumatized, causing her to vomit and suffer severe muscle spasms.

On April 14, 1992, the Turnpike Authority conducted a hearing on the female employee's charge of sexual harassment. At that hearing both parties were allowed to present witnesses, but the

supervisor was not allowed to cross-examine witnesses. At the conclusion of the hearing, the Turnpike Authority found the supervisor had committed an act of sexual harassment and imposed a three-day suspension.

On July 21, 1992, the Supervisors Association filed a grievance on behalf of the supervisor, alleging a violation of the disciplinary procedures contained in the CNA. The Turnpike Authority responded by asserting it had not violated the CNA and that claim was "preempted by federal and state statutes and is not grievable." That response prompted the Supervisors Association to file with PERC a demand for binding arbitration. On September 21, 1992, the Turnpike Authority filed with PERC a scope of negotiations petition. PERC issued its decision in favor of the Supervisors Association on June 24, 1992.

The Turnpike Authority has appealed, contending essentially the manner in which a public employer seeks to prevent sexual harassment in the workplace and the manner in which it seeks to enforce its sexual harassment policy in the workplace are preempted by New Jersey's Law Against Discrimination, *N.J.S.A.* 10:5-1 *et seq.* (LAD), and Executive Order No. 88. Executive Order No. 88 requires state employers to adopt policies to eradicate sexual harassment from the workplace.

The controlling CNA and the Act, *N.J.S.A.* 34:13A-3, inform our decision. Article XV of the CNA details the procedures for imposing discipline on employees who have violated the Turnpike Authority's rules and procedures. In cases of minor discipline, defined as a suspension for not more than five days, the aggrieved employee is entitled to a hearing, an appeal to the executive director, and, finally, binding arbitration. The agreement also stipulates a grievance procedure (Article XIV), which also permits an appeal to the executive director followed by binding arbitration. Another provision of interest in this appeal is Article V, entitled "Non-Discrimination," which recognizes that no employee can be discriminated against by reason of, among other things, sex.

The Legislature by the *L.*1982, *c.* 103, amended the Act to permit public employees to negotiate procedures by which disciplinary disputes can be resolved. Since 1982, *N.J.S.A.* 34:13A–5.3 requires that a public employer and the employees' representative "negotiate in good faith with respect to grievances, disciplinary disputes, and other terms and conditions of employment. Nothing herein shall be construed as permitting negotiations of the standards or criteria for employee performance." The Act further details the scope and mechanics of negotiations over disciplinary procedures:

> Public employers shall negotiate written policies setting forth grievance and disciplinary review procedures by means of which their employees or representatives of employees may appeal the interpretation, application or violation of policies, agreements, and administrative decisions, including disciplinary determinations, affecting them, provided that such grievance and disciplinary review procedures shall be included in any agreement entered into between the public employer and the representative organization. Such grievance and disciplinary review procedures may provide for binding arbitration as a means for resolving disputes. *The procedures agreed to by the parties may not replace or be inconsistent with any alternative statutory appeal procedure nor may they provide for binding arbitration of disputes involving the discipline of employees with statutory protection under tenure or civil service laws.* Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.
>
> [*N.J.S.A.* 34:13A–5.3 (emphasis added).]

PERC focused on the above emphasized language and held the suspended supervisor "has no alternative statutory appeal procedure for contesting that form of discipline" and his "only recourse for neutral review of the accusations against him is the negotiated forum of binding arbitration."

The Turnpike Authority argues that the three-part test for determining negotiability formulated by our case law precludes arbitration. Here, the scope of arbitrability is coextensive with the scope of negotiability. The Turnpike Authority urges that not only do the LAD and Executive Order No. 88 preempt the field, but arbitration of discipline for sexual harassment would significantly interfere with its duty to adopt and implement a policy

against sexual harassment. We find these arguments to be unpersuasive.

The three-part test for determining arbitrability was established by *In re IFPTE Local 195 v. State*, 88 *N.J.* 393, 404–405, 443 *A.*2d 187 (1982). There, the Court observed:

> [a] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [*In re IFPTE Local 195 v. State, supra.*]

*Accord, Office of Employee Relations v. CWA*, 267 *N.J.Super.* 582, 586–87, 632 *A.*2d 530 (App.Div.), *certif. denied*, 135 *N.J.* 468, 640 *A.*2d 849 (1993).

■ We are entirely satisfied the above three-part test governs only those disputes or terms and conditions of employment which the Legislature has not addressed. Because the Legislature "has not chosen to set forth [all] the individual subjects which are to be negotiable," the judiciary has undertaken to determine on a case by case basis "what are terms and conditions of employment within the meaning of *N.J.S.A.* 34:13A–5.3." *Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n*, 64 *N.J.* 17, 31, 311 *A.*2d 737 (1973). Indeed, the judiciary applied the three-part test in 1981 and decided minor disciplinary disputes were not arbitrable. *State v. Local 195, IFPTE*, 179 *N.J.Super.* 146, 152–53, 430 *A.*2d 966 (App.Div.1981), *certif. denied*, 89 *N.J.* 433, 446 *A.*2d 158 (1982). In response to the *Local 195* decision, the Legislature enacted the discipline amendment to the Act in 1982 to overturn that decision. *See State v. State Troopers Fraternal Ass'n*, 134 *N.J.* 393, 411–12, 634 *A.*2d 478 (1993) (which describes the legislative history of the discipline amendment). In view of the clear and unambiguous legislative expression, there is no need for a court to apply the

judicially established three-part test for determining arbitrability. Here, it is undisputed that the toll supervisor has no appeal rights under LAD or any other statute respecting the minor discipline. Consequently, the discipline amendment controls this case.

But even applying the judicially established three-part test to this case would lead us to the same result. The test for whether arbitration is preempted by statute or regulation is whether the provision "establishes a specific term or condition of employment that leaves no room for discretionary action." *In re IFPTE, Local 195, supra,* 88 *N.J.* at 403, 443 *A.*2d 187. The Turnpike Authority argues arbitration is preempted because the "LAD strictly prohibits employers from discriminating on the basis of sex." It also asserts case law plus Executive Order No. 88 impose on public employers the duty to adopt anti-harassment policies and complaint procedures. From this duty the Turnpike Authority reasons that if an employer were bound to subject harassment policies to the compromise and settlement inherent in negotiations, the employer's ability to comply with its obligations under the LAD would be impaired. We reject this argument.

Neither the LAD nor Executive Order No. 88 preempts arbitration in this case. Both the LAD and Executive Order No. 88 protect *victims* of sexual harassment. The LAD establishes a procedure by which victims may seek redress for harassment. In contrast, Article XV of the CNA sets up procedures by which *the person charged with harassment* may challenge his or her disciplinary penalty. To be sure, the two mechanisms address different subjects altogether. As PERC observed, the employer's right to adopt and implement policies against sexual harassment "is distinct from the employees' ability to seek review of disciplinary actions based on allegations of sexual harassment."

The Turnpike Authority's reliance on *Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n,* 185 *N.J.Super.* 269, 448 *A.*2d 487 (App. Div.1982), *aff'd,* 94 *N.J.* 9, 462 *A.*2d 137 (1983) is misplaced. First, *Teaneck* did not involve a grievance procedure for minor discipline. Rather, it involved whether there could be racial discrimi-

nation in the employment of public employees and the deployment of personnel. *Id.* at 12, 462 *A.*2d 137. Second, the "victim" in *Teaneck* and in this case could present their claims to the Division on Civil Rights, while the suspended toll supervisor here has no forum for review except arbitration. Beyond that, we are convinced that affording a legislatively created due process procedure for minor disciplines will not significantly interfere with governmental policy of eradicating sexual harassment from the workplace and enforcing those policies. The requirement that the interference be significant is designed to effect a balance between the interest of public employees and the requirements of democratic decision making.

Finally, the Turnpike Authority's assertion that an arbitrator may be more inclined to find no sexual harassment than the Division on Civil Rights is illusory. An arbitrator in the public sector is not limited to interpreting the contract; he or she must also consider any relevant statutes and public policy. *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 217, 405 *A.*2d 393 (1979); *Local 207 v. Borough of Hillsdale,* 263 *N.J.Super.* 163, 184, 622 *A.*2d 872 (App.Div.1993), *aff'd in part, rev'd in part,* 137 *N.J.* 71, 644 *A.*2d 564 (1994). Thus, an arbitrator would be bound to consider the LAD and other expressions of law and policy, such as *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 600–02, 626 *A.*2d 445 (1993). If his or her decision contradicted that law and policy, it would be subject to vacation. *See, e.g., Jersey City Educ. Ass'n v. Bd. of Educ.,* 218 *N.J.Super.* 177, 188, 194, 527 *A.*2d 84 (App.Div. 1987) (vacating part of award that was inconsistent with LAD).

The final decision by PERC is affirmed.