726 A.2d 942 (1999)
320 N.J. Super. 8
In the Matter of CITY OF NEWARK, Petitioner-Appellant,
v.
NEWARK COUNCIL 21, NEWARK CHAPTER, NEW JERSEY CIVIL SERVICE ASSOCIATION, and Fraternal Order of Police, Newark Lodge No. 12, Respondents-Respondents.
City of Newark, Plaintiff-Respondent,
v.
Fraternal Order of Police, Newark Lodge No. 12, Defendant-Appellant.
A-2380-97T5, A-2960-97T5
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1999.
Decided March 26, 1999.
*943 Hugo R. Ruiz, Assistant Corporation Counsel, for petitioner-appellant City of Newark (Michelle Hollar-Gregory, Corporation Counsel, attorney; Mr. Ruiz, on the brief).
Craig S. Gumpel, Livingston, for respondent-respondent Newark Council No. 21, NJCSA, IFPTE, AFL-CIO (Fox and Fox, attorneys; Mr. Gumpel, of counsel and on the brief).
Charles F. Szymanski, Voorhees, for respondent-respondent Fraternal Order of Police, Newark Lodge No. 12 (Markowitz & Richman, attorneys; Robert P. Curley and R. Matthew Pettigrew, Jr., on the brief).
*944 Robert E. Anderson, General Counsel, for Public Employment Relations Commission.
Before Judges PRESSLER, BROCHIN and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
These public employment appeals, which we consolidate for purposes of this opinion, arise out of the City of Newark's acceptance of a grant under the COPS MORE program of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C.A. § 3796dd, under which financial aid is provided to states and municipalities to assist them in increasing police presence and otherwise improving police effectiveness and police community relations. Newark's grant was based on its plan of returning police officers performing clerical duties to active, operational police work by hiring, transferring and equipping non-police employees to perform non-policing functions. Newark's implementation of that plan ultimately resulted in the transfer and proposed transfer of a variety of clerical duties, covered by five different job titles, from police officers to a total of fortythree civilians, thereby returning those officers to operational duties. The legal issues raised by its having done so are first, whether the transfer of duties formerly performed by police officers to civilians constitutes a non-negotiable, non-arbitrable management prerogative, and second, whether the civilians performing clerical duties for the Police Department belong in the police negotiating unit, represented by the Fraternal Order of Police, Newark Lodge No. 12 (FOP), or the Newark clerical workers' negotiating unit, represented by Newark Council 21, Newark Chapter, New Jersey Civil Service Association, IFPTE, AFL-CIO (Council 21). In re City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 713 A.2d 472 (1998), is dispositive of the first question, the Supreme Court having there held that the transfer of clerical duties to civilians in order to free police officers for operational police duties is a management prerogative. As to the second question, we accept the conclusion of the Director of Representation of the Public Employment Relations Commission (PERC) that N.J.S.A. 34:13A-5.3 requires exclusion of the clerical workers from the police unit and hence their continued representation by Council 21.
The procedural posture of this matter is tortuous and fractionated. It commenced with FOP's filing of a grievance with the Acting Police Director on January 18, 1996, asserting that the Department's action under the COPS MORE program of transferring the duties of four Fair Labor Standards Act (FLSA) clerks, one for each of the Department's four commands, to civilian employees constituted a violation by the City of its collective negotiation agreement. The grievance was not resolved and, as provided for by the agreement, ultimately went to binding arbitration by an arbitrator agreed to by the parties. The issue presented to the arbitrator was:
Are the duties currently performed by the Principal Time Keeper [FLSA clerk], that were previously performed by Police Officers, a violation of the Collective Bargaining Agreement? If so, what shall the remedy be?
The arbitrator, by an award issued on March 20, 1997, concluded that the transfer of clerical duties to civilians did not violate the collective negotiation agreement since the "displaced" police officers would "continue to function as Police Officers in their Core Duties, in crime prevention and crime deterrent capacities" and civilians would not be doing actual police work but only clerical work. The arbitrator also concluded, however, that under the unit-work rule, the "FLSA clerical positions cannot be removed from the [FOP] bargaining unit." Accordingly, the award required the civilians holding those positions to be represented by the FOP.
Both Newark and the FOP requested clarification by the arbitrator in respect of the effect of N.J.S.A. 34:13A-5.3 on that portion of the award addressing representation of the clerical workers. N.J.S.A. 34:13A-5.3 provides in relevant part that "except where established practice, prior agreement, or special circumstances dictate the contrary, no policeman shall have the right to join an employee organization that admits employees *945 other than policemen to membership." The arbitrator, by a written clarification dated August 12, 1997, concluded that the COPS MORE program constituted a special circumstance within the legislative intendment and that, therefore, civilians performing clerical duties for the police department were not statutorily prohibited from membership in FOP.
The arbitrator's award and clarification triggered a variety of responses from Newark and FOP, the sole parties to the arbitration, as well as from Council 21, which took the position that the civilian clerical workers replacing police officers belonged in the clerical unit, which it represents. First, two weeks after the arbitrator's clarification of award and in reliance thereon, Newark filed a Clarification of Unit Petition (CUP) with PERC seeking to exclude thirty-nine additional employees performing clerical duties in the Police Department from Council 21 and to have them represented by FOP.[1] This petition was resisted both by FOP, which contended that non-police personnel did not belong in the police unit and could not be placed there by reason of N.J.S.A. 34:13A-5.3, and by Council 21, which was invited by PERC to intervene. Before PERC acted on the petition, however, Newark also filed an action in the Chancery Division pursuant to N.J.S.A. 2A:24-7 seeking confirmation of the arbitration award and clarification, and FOP filed an action thereunder seeking vacation. Those actions were later consolidated by consent order. Neither the four clerical employees who were the subject of the award nor Council 21 was, however, ever a party to that action.[2]
The PERC proceedings on the CUP continued while the consolidated Chancery Division action was pending. On October 20, 1997, Edmund G. Gerber, Director of Representation, wrote to the three parties, Newark, FOP and Council 21, advising of his tentative decision that none of the clerical employees belonged in FOP. The parties all responded to the Director's invitation for comments, and each reiterated its prior contentions, both unions asserting that the clerical employees belonged in Council 21 and Newark, for no clear reason that we can perceive, insisting that they belonged in FOP. On November 17, 1997, the Director issued his formal decision reaffirming his tentative decision.
Relying on this court's opinion in County of Gloucester v. Public Emp. Rel. Comm., 107 N.J.Super. 150, 257 A.2d 712 (App.Div. 1969), aff'd o.b., 55 N.J. 333, 262 A.2d 1 (1970), the Director's decision reaffirms the proposition that for purposes of N.J.S.A. 34:13A-5.3, the term "policemen" encompasses only those public officers with the statutory duty and power of criminal detection, apprehension and conviction, i.e., those public employees authorized to exercise statutory police powers. He further found, after analyzing their duties, that the civilian employees performing the transferred job functions were not police officers as so defined since the duties assigned to their job titles in no way involved the exercise of statutory police powers or operational police work. Nor did he find any special circumstances within the statutory intendment requiring PERC to depart from its long and consistently held view that "police and non-police should not be in the same unit," particularly since there was no suggestion that the civilian clerical workers could not continue to be adequately represented by a non-police unit. The formal decision also addressed the contrary view of the arbitrator, pointing out that while PERC ordinarily grants deference to the arbitrator, nevertheless PERC's jurisdiction over the interpretation and implementation of the Employer-Employee Relations Act is primary. Hence, while the decision recognizes that unit-placement disputes are generally *946 arbitrable, an arbitrator's decision must be rejected if PERC finds it, as here, to be repugnant to the Act.
By letter dated December 9, 1997, Newark requested review by PERC of the Director's formal decision. Both FOP and Council 21 objected on the ground that the request for review was made beyond the ten-day period prescribed by N.J.A.C. 19:11-8.1. Before PERC responded, however, Newark filed an appeal with this court from the Director's decision, the appeal under Docket Number A-2380-97T5, and PERC then, relying on R. 2:9-1, declined to consider the matter further.
In December 1997, the Chancery Division judge addressed the Newark-FOP arbitration dispute, the Director's formal decision constituting part of the record before him. Recognizing that ordinarily the courts defer to PERC's primary jurisdiction and to its expertise, the judge nevertheless concluded that he was obliged to exercise his statutory jurisdiction over the arbitration award pursuant to N.J.S.A. 2A:24-7. In so doing, he applied the "reasonably debatable" test applicable to review of public-employment arbitration. See, e.g., New Jersey Dept. of Law and Public Safety v. State Troopers Fraternal Ass'n, 91 N.J. 464, 469, 453 A.2d 176 (1982). He concluded that reasonable debatability was demonstrated by the disagreement between the arbitrator and the Director. He apparently was also of the view that the clerical duties could not be transferred to civilians unless the civilians were placed in FOP. He thus concluded that the consequent mixed unit was an inevitable consequence of the COPS MORE program, and that the public interest in the implementation of the program overrode any countervailing considerations interdicting police-unit representation of civilians. Accordingly, he confirmed the arbitrator's award. FOP appealed under Docket Number A-2960-97T5, and we ordered that the appeals be calendared backto-back.
Our consideration of these appeals, as noted, is governed by Jersey City Police Officers, supra, 154 N.J. 555, 713 A.2d 472 (1998), decided after these appeals were filed, which held that the transfer of clerical duties to clerical workers, if part of a police department reorganization designed to return police officers to operational policing duties, is a management prerogative, therefore non-negotiable and hence non-arbitrable. It further held that such a transfer does not implicate the unit-work rule. We recognize that in Jersey City Police Officers the issue arose in a somewhat different factual context, namely a formal reorganization plan identifying "sixty-four clerical, technical, and other non-police positions held by police officers that were to be filled by civilians," enabling the deployment of those police officers into field positions. Id. at 559, 713 A.2d 472. The transfer of duties here did not arise from a formal reorganization plan but rather from Newark's implementation of the terms of its COPS MORE grant. We are, however, satisfied that the distinction is entirely without legal significance since the effect and purpose of Newark's program are identical with that of Jersey City's.
It is first clear that FOP's challenge to that portion of the arbitrator's award permitting Newark to transfer the clerical and other non-police job duties to civilian employees must fail since, in the circumstances here, Newark's decision to do so, under Jersey City Police Officers, was a nonnegotiable management prerogative. Accordingly, it was also, by definition, nonarbitrable. See, e.g., New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors, 143 N.J. 185, 204, 670 A.2d 1 (1996). In sum, the issue never should have been submitted to arbitration at all. We recognize that the arbitrator's award favored Newark as a matter of contract interpretation. But the arbitrator did not have the authority to treat the matter as an arbitrable grievance in the first instance, and the award was subject to vacation on the ground that he exceeded his powers. N.J.S.A. 2A:24-8d. Beyond that, it has long been settled that where grievance arbitration of a particular matter is challenged by the public employer on the ground that the subject of the grievance constitutes a management prerogative and is hence not negotiable in the first instance, the jurisdiction of PERC is primary and the trial court should defer to PERC. See, e.g., In re Paterson *947 Police PBA v. City of Paterson, 87 N.J. 78, 84, 432 A.2d 847 (1981); Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 153-155, 393 A.2d 278 (1978). The Chancery Division judge should not, therefore, have addressed the merits but rather referred the matter to PERC. Clearly, the jurisdictional and procedural anomaly here, at least in respect of the issue of transfer of duties, would have been avoided had Newark initially resisted arbitration on the ground of non-negotiability, an issue presumably later raised by its post-arbitration scope of negotiations petition.
We next address the representation issue raised by both appeals, considering first, on the appeal from the PERC decision, the procedural question of Newark's failure to exhaust its administrative relief. The unions argue that the Director's decision was not a final agency decision and hence that Newark's appeal should be dismissed on that basis. It is, of course, clear that Newark should have withheld filing of its appeal until PERC responded to its request for review, and ordinarily, its failure to have done so would dictate dismissal of the appeal on exhaustion grounds. But it is also well settled that the exhaustion requirement is subject to relaxation in the public interest and for purposes of expedition of litigation, particularly where legal issues alone are involved. See generally In re Stoeco Dev., Ltd., 262 N.J.Super. 326, 335-336, 621 A.2d 29 (App. Div.1993). We think it, moreover, plain that to the extent agency expertise is involved, and that is a significant matter in PERC cases, the Director's decision represents PERC's views regarding the statutory and policy reasons for interdicting a mixed police and civilian unit in the circumstances here.[3] Furthermore, we would be hard pressed to review the appeal from the confirmation of the arbitration award requiring FOP to represent the clerical workers without considering the Director's contrary decision.
There is also, of course, a jurisdictional issue. We do not doubt the correctness of the Director's conclusion that while individual unit placements may be subject to arbitration, nevertheless when the question of unit placement affects the basic structure of negotiating units, PERC's jurisdiction is primary. See, e.g., Matters of State, 114 N.J. 316, 322-324, 554 A.2d 1309 (1989); State v. Prof. Assoc. of N.J., Dept. of Ed., 64 N.J. 231, 258, 315 A.2d 1 (1974). This is particularly so when resolution of the question depends upon the construction of a statutory provision constituting part of a legislative scheme with whose interpretation and implementation PERC is charged. We are satisfied, therefore, that the procedures outlined by Ridgefield Park, supra, applied to this arbitration award, and that the Chancery Division, having the benefit of PERC's views respecting both its primary jurisdiction and the merits of the dispute, should have refrained from passing on the merits of the issue despite its general subject matter jurisdiction under N.J.S.A. 2A:24-7, and instead should have referred the matter to PERC. This is precisely what the trial judge did in In re Paterson Police PBA, op. cit. supra, when asked to review an arbitration award on a question within PERC's primary jurisdiction, and that should have been done here.
With respect to the merits of the issue, we think it plain that the strict construction accorded by the Director to N.J.S.A. 34:13A-5.3 is consistent with the policy and purpose of the Public Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -29, and correctly applies the rationale of our decision in County of Gloucester, supra, 107 N.J.Super. 150, 257 A.2d 712. Police officers are clearly in a separate and special category of public employees, implicating quite distinct and unique terms and conditions of employment. Moreover, in view of the nature of their policing function, there is a clear potential for a variety of conflicts of interest if police officers were in the same unit as other employees. Furthermore, we not only defer to but also agree with the Director's conclusion that the transfer of civilians to clerical and other non-police work under the COPS MORE program is not a special circumstance within the intendment of N.J.S.A. 34:13A-5.3. Nothing in this record *948 suggests that the clerical workers cannot be adequately and properly represented by Council 21.
Nor does the unit-work rule, relied on by the arbitrator, have any relevance here. As explained by Jersey City Police Officers, supra, 154 N.J. at 576, 713 A.2d 472, "the rule applies to require collective bargaining before workers in the bargaining unit are replaced by non-unit workers, the objective being to provide the union with at least an opportunity to negotiate an acceptable alternative...." Its purpose, of course, is to afford reasonable protection to the unit from loss of jobs within the unit and the consequent reduction in union membership. But, as in Jersey City Police Officers, "no job losses are contemplated because the police officers performing non-police duties are being reassigned to police work." Ibid. Moreover, as we have already pointed out, FOP, the union that would be adversely affected by a unilateral application of the unit-work rule, takes the position that the clerical workers to whom the duties formerly performed by police officers have been transferred do not belong in the police officers' unit. In sum, FOP specifically rejects the protection of the unit-work rule to the extent it would be applicable to the representation issue. Finally, Jersey City Police Officers, by way of dictum, points out that the civilian "replacements... cannot be represented by the [police] unions, which represent only police officers, and thus the possible reduction in [police] union membership is merely coincidental." Ibid. Although not expressly so stated, we think it plain that the explanation for this dictum lies in N.J.S.A. 34:13A-5.3 and the strength of the public policy that police officers not be members of mixed units.
It is virtually axiomatic that unlike private arbitration, the standard of review of public-employment arbitration in an action to confirm or vacate an award requires the court to consider the consistency of the award both with the law and with the public interest. See, e.g., New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors, supra, 143 N.J. at 198, 670 A.2d 1. For the reasons stated in the Director's decision, we are satisfied that the arbitrator's award in respect of unit representation contravened N.J.S.A. 34:13A-5.3 and hence that its confirmation was in error on the merits as well as on grounds of primary agency jurisdiction.
The judgment affirming the arbitration award, appealed from under Docket Number A-2690-97T5, is reversed, and we direct vacation of the award. The decision of the Director, appealed from under Docket Number A-2380-97T5, is affirmed.
NOTES
[1] The employees held the clerical positions of police aide, principal timekeeper, typist, communications operator and communications operator trainee.
[2] According to the record, FOP also filed with PERC an unfair labor practice claim against Newark based on the placement of the clerical workers in the police unit and Newark filed a scope of negotiations petition with PERC seeking a determination that the transfer of non-police duties to civilian employees is a non-negotiable management prerogative. The record does not, however, indicate the disposition, if any, of these proceedings, and, in any case, they are not directly relevant to this appeal.
[3] Although PERC raises the exhaustion issue, its letter brief nevertheless makes clear that it views the Director's decision as correct and, indeed, statutorily mandated.